343 So.2d 1229 (1977)
JAMES REEVES, CONTRACTOR, INC., a Mississippi Corporation, and Lewis Long
v.
Mrs. Jepthania CHAIN.
No. 49237.
Supreme Court of Mississippi.
March 23, 1977.
*1230 Gibbes, Graves, Mullins, Bullock & Ferris, C. Denton Gibbes, Jr., Laurel, for appellants.
John K. Keyes, Collins, A.A. Calhoun, Mount Olive, for appellee.
Before GILLESPIE, SMITH and WALKER, JJ.
GILLESPIE, Chief Justice:
Suit was filed by Mrs. Jepthania Chain in the Circuit Court of Covington County against James Reeves, Contractor, Inc., (Contractor) and its driver, Lewis Long (Long), for personal injuries. Judgment was entered for plaintiff and defendants appeal. Contractor and Long confessed liability and the sole question raised on this appeal is whether the verdict was grossly excessive.
Long was driving Contractor's truck along the main street in Collins at a point where the railroad crosses the street at right angles. Mrs. Chain was driving her husband's pickup truck and stopped at the railroad track. Long was operating Contractor's truck about forty feet behind Mrs. Chain. When he applied his brakes the truck slid on the wet street and knocked the Chain truck forward about twenty or more feet. Both drivers drove their vehicles away from the scene of the accident. No charges were made by the police. Mrs. Chain drove her truck to a nearby service station where the fender which had been bent so as to rub the tire was pried back to avoid rubbing the tire. Mrs. Chain's head struck the gun-rack mounted to the rear of the seat.
Prior to filing suit, Contractor paid to Mrs. Chain $6,985.20 for medical, hospital and other expenses. At the conclusion of the trial at which the jury was instructed to deduct the $6,985.20 from the total damages, the jury returned a verdict for $150,000.
In addition to striking her head on the gun-rack, Mrs. Chain testified that she was thrown against the steering wheel and that "everything went black for a few minutes." After the accident she checked with the children who were riding in the camper on the back of the truck and then proceeded to her home. The accident occurred on April 23, 1973. Mrs. Chain was about thirty years old, married and the mother of three children.
The only question is the amount of the damages. The plaintiff's medical history after the accident and prior thereto and a summary of the results of her treatment are necessary to decide the issue.
On April 23, 1973, the same day of the collision, plaintiff went to the Covington County Hospital, and was examined by a nurse. No skin abrasions or broken bones were found and she was given a prescription for pain and discharged.
On April 24, 1973, she returned to the hospital and complained of pain in the rib cage area, back and head. X-rays were made of her back and neck, and she was discharged the same day.
On April 28, 1973, she was admitted to the hospital in Collins where she was treated by Dr. Tyler, a general practitioner, who treated her with antibiotics and pain injections *1231 for her neck and back. She was discharged on May 1, 1973.
On May 2, 1973, she was readmitted to the hospital in Collins because she was experiencing pain and swelling in her legs, which was diagnosed as phlebitis. She was discharged on May 5, 1973.
On May 10, 1973, she was admitted to Forrest General Hospital in Hattiesburg by Dr. Conerly, where she spent nineteen days under an aquapad in an attempt to reduce the swelling of the varicosities and the phlebitis. She complained of severe pain in her back, stomach, rib cage and back of her head. She was discharged on May 29.
On June 4, 1973, she was readmitted to Forrest General Hospital by Dr. Clark, an associate of Dr. Conerly, and she was still suffering from phlebitis in her legs, swelling in the abdomen, back pain and some blurred vision. She spent seven days under an aquapad. On June 11, Dr. Clark performed surgery across the lower abdomen and down both legs (vein stripping). She was discharged on June 18 and spent the next six weeks bandaged from the rib cage to her toes.
On September 26, 1973, she was again readmitted to Forrest General Hospital complaining of severe back pain. She was treated by Dr. Dyas who placed her in traction. This treatment produced nausea. She returned to her home on October 2.
On October 7, 1973, she was readmitted to Forrest General Hospital and was placed in traction until October 12. During this time she complained of extreme pain and a myelogram was performed. Dr. Dyas did not testify, but Mrs. Chain said he recommended either surgery or a chair back brace. She chose the back brace which she wears at all times except in bed.
On April 21, 1974, she was admitted to the Methodist Hospital by Dr. Attix, and she spent the next ten days under pelvic and cervical traction, being discharged on May 1, 1974. Dr. Attix did not recommend surgery.
In August, 1974, twenty-pound pelvic traction to be worn at night was prescribed. In October, 1974 ten-pound cervical traction was prescribed, and in November, a cervical collar was recommended.
Mrs. Chain has been treated by local doctors since the time of the accident, receiving pain injections, antibiotics, and vitamin injections to control weight loss.
Plaintiff had a long history of medical treatment and surgery before the accident. In 1960 she had surgery (vein stripping) where one vein was cut and tied; she also had a pilonidal cyst removed at this time. In 1963, an appendectomy was performed; again in 1963 or early 1964, Dr. Reeves performed surgery (vein stripping) on both her legs. Again in 1967, another vein stripping surgery was performed. In 1969, she had a hysterectomy.
Dr. Richard Harris Clark, a general surgeon, performed the vein operation after the accident. The vein stripping involved removal of the greater saphenous veins in both legs, which run from the groin to the ankle. Other veins in the legs and veins above the groin at the lower end of the abdominal wall were also removed. Dr. Clark was of the opinion that although Mrs. Chain was predisposed to having trouble with her veins, the trauma and the inactivity of being in the hospital after the accident precipitated the episode which required the surgery. She had a normal stay in the hospital and her post-operative experience was good. Dr. Clark testified that he did not foresee that the problem with her veins was going to be of a chronic nature, especially that precipitated by the accident.
Mrs. Chain's other area of difficulty was her back. She first went to Dr. Edmund Dyas, an orthopedic surgeon, who caused a myelogram to be made and diagnosed her difficulty as degenerative arthritis L-5, S-1. A fusion operation or back brace was recommended. Mrs. Chain chose the back brace and later, according to her testimony, a Dr. Giles told her, after Dr. Dyas moved to Mobile, that she should try discarding the back brace but she testified that she could not do so because of the pain. Thereafter *1232 she went to Dr. Attix, who prescribed a cervical collar which she still wears.
Dr. Edward A. Attix first saw Mrs. Chain on April 21, 1974, which was about a year after the accident. She had some tenderness in the lower back and some pain with the movement of her neck and there was tenderness in the lower dorsal area of the back. The reflexes in her arms were normal and there was no loss of sensation or wasting of muscles in the legs, but there was a suggestion of nerve root compression on the left side. X-rays showed some restriction of motion of the neck, suggesting some muscle spasm and a narrowing of the lumbar discs. There appeared to be some instability in the disc space between the fourth and fifth vertebrae. Dr. Attix considered that since she was treated immediately following the accident and that those conditions have been continuous, he assumed they were secondary to the accident. Dr. Attix disagreed with the report of Dr. Dyas that Mrs. Chain was suffering from arthritis. Dr. Attix stated that the record of the myelogram made at the instance of Dr. Dyas suggested a herniated disc, but he did not recommend an operation. The disabilities he found in Mrs. Chain were compatible with those of an automobile accident described as having happened to her on April 23, 1973. Dr. Attix concluded that he felt there was some pressure on the nerve roots in the lumbosacral area and secondary to the herniation of intervertebral discs in those areas, and that she will suffer, in his opinion, a ten percent disability to the body as a whole and will have some limitations on lifting heavy objects. He was further of the opinion that she would need conservative treatment for a few months with additional medical bills estimated to be about $200.
Mrs. Chain testified that she has suffered continuously from various ailments since the time of the accident; that she is unable to do her house work, do her church work, or play with her children as she had before because the pain in her neck, lower back and legs is constant and because of the wearing of the brace.
We have carefully studied this case in view of the only assignment of error, which is that the amount of the verdict is grossly excessive. We have also considered the various cases cited by the parties, none of which in our opinion have more than a general application to the case at bar. The verdict in this case was for $156,985.20 when the amount of medical bills already paid by the defendants is considered.
We are of the opinion that the verdict is grossly excessive. The test for determining whether a verdict is grossly excessive is whether it evinces passion, bias and prejudice on the part of the jury so as to shock the conscience. Some of our cases have the statement that the test is whether the jury has responded to reason or whether the evidence justified the amount of the verdict. Applying these tests we are of the opinion that this verdict is grossly excessive.
Mrs. Chain had two main areas of concern, phlebitis and her back pain. There is nothing to show that she was in any worse condition after she recovered from the operation on her veins than she was after any of the three previous operations that occurred prior to the accident. Her back difficulties were not of sufficient gravity to require an operation and Dr. Attix was of the opinion that his medical bills with reference to her back would not exceed $200 in the future, and that her disability was limited to ten percent. Her entire medical expenses amounted to $8,732.70, of which $6,985.20 have already been paid by the defendants. Mrs. Chain has had a limited work experience. She has a twelfth grade education. In 1973, she worked in Collins at the local high school as a substitute school teacher earning $12 each day that she substituted. She spent sixty days altogether in hospitals and has suffered substantial pain and will no doubt suffer some pain in the future. When the ultimate facts are viewed in the light most favorable to Mrs. Chain, we are of the opinion the verdict is grossly excessive by $50,000.
If plaintiff exercises her option to accept the remittitur within ten days after this *1233 judgment becomes final, the judgment will be affirmed for $100,000, plus interest from May 27, 1975. Otherwise the judgment will be reversed and remanded for a new trial on damages only.
AFFIRMED ON CONDITION OF REMITTITUR.
PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.