573 So.2d 1371 (1990)
John S. JORDAN
v.
Georgia Marie Redus McKENNA.
No. 07-CA-59116.
Supreme Court of Mississippi.
December 27, 1990.
Rehearing Denied February 13, 1991.
*1372 Rufus A. Ward, Jr., Harry Scott Ross, Tubb Stevens Morrison & Ross, West Point, Jim Waide, Tupelo, for appellant.
Charles T. Yoste, Starkville, J. Niles McNeel, McNeel & Ballard, Louisville, for appellee.
EN BANC.
ROBERTSON, Justice, for the Court:

I.
This appeal arises from a civil action for assault and battery. A young Oktibbeha County, Mississippi, woman has secured a jury verdict for substantial damages against the man who cruelly raped her. The defendant appeals charging errors in evidentiary rulings at trial and urging reversal.
The matter acquires a special context in that the state's criminal justice arm has found the defendant guilty of rape, and this Court has affirmed. In the end, this becomes quite important to today's affirmance.

II.
On March 30, 1984, a Friday, then twenty-one-year-old Marie Redus was alone at her home at the terminus of a dead end road off Highway 12 in Longview, Mississippi, out from Starkville. About one o'clock that afternoon an older model dark blue car with a white top and lots of chrome pulled into the driveway. A large man with broad shoulders, and a strong face with a cleft in his chin, and wearing Air Force sunglasses, got out. The man *1373 came to the house and asked Marie if her mother was at home, that she had told him of some property that was for sale in Longview, and he was interested in it. The man gave his name as James Prentiss. When Marie told the man her mother was not home, he asked if he could use the telephone. Marie handed him the telephone book and moments later he flung her to the floor, assaulted and raped her, clutching her throat to thwart resistance.[1]
Once she was sure the man had gone, Marie ran to a nearby grocery store-restaurant owned by Al Perrozzi and his wife and, crying and distraught, told of the attack. She was taken to the Oktibbeha County Hospital and examined by a physician, and tests were made, confirming that Marie had suffered a sexual assault.
Marie described her assailant as an older man in his late forties with greying hair, over six feet tall, wearing brown pants and a brown leather-type jacket with a hole in the right sleeve, and driving an older model blue car. Marie pointed to the Sheriff's gun belt to give the color of the jacket.
Oktibbeha County Sheriff Dolph Bryan investigated the assault, without much initial success. For the next few months, as he was patrolling the county, Sheriff Bryan methodically began noting cars and drivers approaching Marie's description of her assailant and his vehicle. From the license plates of these cars he would ascertain the name of the owner and from this procure a copy of the owner's driver's license from the Department of Public Safety in Jackson. After accumulating a dozen or more of these license facsimiles, he would obscure the names and addresses on the licenses and conduct a photographic lineup, displaying to Marie the "mug shot"-style photos. Over the next two years, Sheriff Bryan conducted many such lineup sessions with Marie, all without success.
In 1986 Sheriff Bryan's patience and persistence paid off. John S. Jordan was implicated in another rape occurring in adjacent Clay County. Jordan's photograph had appeared in one of Sheriff Bryan's earliest photo lineups, although Marie failed to recognize his picture, perhaps owing to the poor quality of the transmitted image. Hearing of the Clay County charges, Sheriff Bryan procured another facsimile of Jordan's driver's license. He soon realized that he had presented Jordan's picture to Marie once before, although since that time Jordan had renewed his license and had a new picture taken. Using Jordan's more recent and significantly sharper image, Sheriff Bryan prepared another photographic lineup and presented it to Marie on July 17, 1986. Marie identified the picture of Jordan as a picture of the man who attacked her, then went home and thought about it, because she wanted to make sure. She later returned and told Sheriff Bryan that Jordan was definitely the rapist.
Shortly thereafter Sheriff Bryan went to Jordan's home in West Point, and, when he arrived, he saw an automobile that matched the description Marie had given him of the car her assailant drove, so he took Polaroid pictures of it. Sheriff Bryan and Highway Patrol Investigator Jimmy Edwards received no response when they knocked on the front and back doors. The two started to leave, but because the cars were there, they suspected someone was at home and returned. Sheriff Bryan and Investigator Edwards noticed a yellow dog looking out in a nearby soybean field. They decided to go see what the dog saw and found Jordan on his "belly crawling off in the opposite direction." Jordan returned with them to the house. The next day Sheriff Bryan returned with arrest and search warrants and took Jordan into custody, seizing items of clothing thought to be of evidentiary value.
On August 1, 1986, the Oktibbeha County Grand Jury charged Jordan with forceable rape. Seven weeks later, Marie commenced the present civil action by filing her complaint in the Circuit Court of Oktibbeha County. Jordan answered denying the essential allegations of the complaint.
*1374 Once Jordan had been criminally convicted,[2] Marie reactivated her civil action, and the case was called for trial on January 28, 1988. Marie provided a positive in-court identification of Jordan as the man who attacked her. When Sheriff Bryan had searched the Jordan home in July of 1986, he had found a brown leather jacket with a patched right sleeve, which Marie said her rapist wore. A seamstress who lives near the Jordans testified that, about a month after the rape (of which she had no knowledge), she put a triangular patch over the hole on Jordan's jacket and otherwise tried to repair it. Marie also was shown a pair of slacks seized from Jordan's home and identified them as the same type worn by her assailant. The car and its color became a subject of great controversy, with Marie claiming the car in the photograph was the one driven by her assailant, while Jordan's proof was that this was his wife's car and furthermore that it had a different color at the time and that it had been home all day March 30.
Marie provided testimony from a forensic serologist for the Mississippi Crime Laboratory who analyzed Marie's blood type and Jordan's as well. The test is one of exclusion. The serologist testified that the seminal fluid found on Marie's clothing had been deposited by a male of type A blood who was a secretor, a finding which fit Jordan, and, some thirty-two percent of the male population.[3]
As at his criminal trial, Jordan's defense was one of alibi. He claimed that he had left Mississippi on Thursday night, March 29, 1989,  the night before Marie was raped  and had driven to Plano, Texas, to attend a fiftieth wedding anniversary celebration for his aunt and uncle. A number of Jordan's relatives in Texas appeared at trial and testified that Jordan arrived in Plano on the morning of Friday, March 30, driving his green Rambler. Jordan's wife, Jo Jordan, stayed behind in Clay County and said she called Plano at 7:30 a.m. on March 30 and spoke with him at length.
In the end, the jury rejected Jordan's defense and returned a verdict for Marie, awarding actual damages in the amount of $380,000.00 and punitive damages of $50,000.00. Jordan moved for a new trial and/or a remittitur, and the Circuit Court denied these motions. Jordan now appeals to this Court.

III.
Jordan charges that the Circuit Court erred in a variety of particulars and urges reversal. All of these issues founder upon a more fundamental plain error below  the Court's failure to perceive that elementary principles of collateral estoppel precluded Jordan relitigating the fact issue of whether he raped Marie. The point goes to Jordan's fault, but not causation nor damage.
Through the facility of its duly-empaneled jury the Circuit Court of Oktibbeha County on February 7, 1987, found as a fact that John S. Jordan assaulted Marie and raped her in her home in Longview, Mississippi, on Friday afternoon, March 30, 1984. This Court affirmed Jordan's conviction and sentence and specifically held that the evidence was legally sufficient that the Circuit Court had
... correctly overruled Jordan's post-trial motion for a judgment of acquittal, notwithstanding the verdict [citing cases] and that the court had "acted well within its discretion when it held that the verdict was not contrary to the overwhelming weight of the evidence, but denying *1375 Jordan's motion for a new trial. [citing cases]
Collateral estoppel decreed Marie entitled to have the fact of Jordan's fault taken as established. Jordan thus entered the present proceedings faced with a final finding of fact that he had assaulted and raped Marie.
Notwithstanding recent ferment around its periphery, see McCoy v. Colonial Baking Co., Inc., 572 So.2d 850 (Miss. 1990), collateral estoppel's core has been settled in this state for years. For example,
[W]here a question of fact essential to a judgment is actually litigated and determined by a valid and final judgment, that determination is conclusive . .. [against the party against whom it was made] in a subsequent suit on a different cause of action.
Garraway v. Retail Credit Company, 244 Miss. 376, 385, 141 So.2d 727, 730 (1962); Dunaway v. W.H. Hopper & Associates, Inc., 422 So.2d 749, 751 (Miss. 1982); Magee v. Griffin, 345 So.2d 1027, 1032 (Miss. 1977). The unsuccessful party is precluded from relitigating the fact so found. Offensive use of collateral estoppel by one such as Marie is likewise allowed, at least in core cases such as this. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).
In a sense, collateral estoppel functions as though it were a rule of evidence. Mississippi Employment Security Commission v. Philadelphia Municipal Separate School District, 437 So.2d 388, 396 (Miss. 1983); Sanders v. State, 429 So.2d 245, 251 (Miss. 1983). The party in whose favor the fact was found in the first action is said to enter the second trial with that fact established in his favor.
The rule is neither mandatory nor mechanically applied, however, where there are overriding public policy considerations, counsel and otherwise. Beyond this, we have said
Where there is room for suspicion regarding the reliability of those first fact findings, collateral estoppel should never be applied.
Mississippi Employment Security Commission v. Philadelphia Municipal Separate School District, 437 So.2d at 397. One of the circumstances in which such suspicion may arise is where, in the first action, the party against whom the fact is sought to be established did not have reason to foresee the future litigation and did not have adequate incentive to genuinely contest the fact. See Bogard v. Cook, 586 F.2d 399 (5th Cir.1978); cf. Brewer v. Browning, 115 Miss. 358, 76 So. 267 (1917).
None of these escape hatches is available to John S. Jordan. Marie's civil action was filed long before the criminal trial. Jordan well knew that he was being sued in tort on the same facts at issue in the criminal prosecution. More importantly, Jordan had great incentive to contest these central facts at the criminal trial. He was being prosecuted for a very serious felony and his substantial liberty was on the line. Jordan enjoyed substantial protections not available to him in today's case, further counselling credence for the criminal trial's findings. The jury in his criminal case was instructed that it could find him guilty of raping Marie only if it found that the prosecution had proved each element of its case beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Our law has long accepted the view we take today, albeit under another label. In many contexts, violations of statutory duties are actionable per se. Cuevas v. Royal d'Iberville Hotel, 498 So.2d 346, 348 (Miss. 1986); McRee v. Raney, 493 So.2d 1299, 1300 (Miss. 1986); Stong v. Freeman Truck Line, Inc., 456 So.2d 698, 707 (Miss. 1984); Munford, Inc. v. Peterson, 368 So.2d 213, 217 (Miss. 1979); U-Haul Co. v. White, 232 So.2d 705, 708 (Miss. 1970); Otto v. Specialties, Inc., 386 F. Supp. 1240 (N.D. Miss. 1974). Felony convictions may be offered as evidence of the violation, Rule 803(22), Miss.R.Ev., and the only reason we do not admit misdemeanor convictions is that frequently the defendant was found guilty without counsel or without adequate incentive to resist. Here our rape statute, Miss. Code Ann. § 97-3-65(2) (Supp. 1984), *1376 imposed a duty well within the contours of the common law tort of assault and battery. Marie was one of those the statute was designed to protect. When we hold Jordan's rape conviction, once final, established his fault in tort, we do nothing more than restate our traditional view of conduct actionable per se.
The common sense of the matter controls. If Jordan has been found beyond a reasonable doubt to have assaulted and raped Marie on March 30, 1984, it stands to reason that, in a civil action where Marie's burden is but by a preponderance of the evidence, substantial credibility should be given the criminal finding. Proceeding on this simple bit of logic, other jurisdictions have generated much authority. For example, in Breeland v. Security Insurance Co., 421 F.2d 918, 922 (5th Cir.1969) (applying Louisiana law), the Court stated:
[t]he number of jurisdictions holding that a criminal conviction precludes litigation of the same issue in a civil suit is ever increasing. E.g., Hardin v. Aetna Casualty and Surety Company., 5 Cir.1967, 384 F.2d 718, cert. denied, 391 U.S. 971, 88 S.Ct. 2047, 20 L.Ed.2d 886; United States v. Fabric Garment Company, 2 Cir.1966, 366 F.2d 530; United States v. Gramling, 5 Cir.1950, 180 F.2d 498; Teitelbaum Furs, Inc. v. Dominion Insurance Company, 1962, 58 Cal.2d 601, 25 Cal. Rptr. 559, 375 P.2d 439; Taylor v. Taylor, 1962, 257 N.C. 130, 125 S.E.2d 373; In re Kravitz' Estate, 1965, 418 Pa. 319, 211 A.2d 443; Mineo v. Eureka Fire & Marine Insurance Company, 1956, 182 Pa.Super. 75, 125 A.2d 612; Eagle, Star and British Dominions Insurance Company v. Heller, 1927, 149 Va. 82, 140 S.E. 314, 57 A.L.R. 490; see Local 167 of International Bro'hood of Teamsters v. United States, 1934, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804; Connecticut Fire Insurance Company v. Ferrara, 8 Cir.1960, 277 F.2d 388, cert. denied, 364 U.S. 903, 81 S.Ct. 231, 5 L.Ed.2d 195; Stagecrafters' Club, Inc. v. District of Columbia Division, D.D.C. 1953, 111 F. Supp. 127.
The Court upheld the district court's grant of summary judgment against Breeland wherein it stated:
The fact issues ... raised by the defendant herein were distinctly pur (sic) [put] at issue and directly determined by the jury in the prosecution of Breeland... . Breeland had had his day in a competent court with the opportunity to produce his witnesses and to examine and cross-examine witnesses and to appeal, which he did with the result that the judgment was affirmed. In the criminal case he had the safeguards and benefits afforded all accused under our system of law... . [The criminal charges] were required to be and were proven beyond a reasonable doubt, a more exacting degree of proof than that which would be required in a trial herein. We do not believe Breeland is entitled to re-litigate those issues.
Breeland, 421 F.2d at 923.
The Fifth Circuit has reaffirmed this view in Wolfson v. Baker, 623 F.2d 1074 (5th Cir.1980), and again in United States v. Thomas, 709 F.2d 968, 972 (5th Cir.1983). The federal courts in this state have followed suit. See United States Fidelity and Guaranty Co. v. Moore, 306 F. Supp. 1088 (N.D.Miss. 1969):
[A] conviction in a prior criminal case is conclusive, in a subsequent civil action, of the facts upon which the conviction was based.
Moore, 306 F. Supp. at 1095.
The law is settled that the final findings of a criminal court jury regarding the facts of a matter must be given collateral estoppel effect in subsequent criminal proceedings. See Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), which we have followed in Sanders v. State, 429 So.2d 245, 250-51 (Miss. 1983), and other cases. If this be so, there is no reason on principle why collateral estoppel's preclusive effect should not apply in civil actions where the finding offered in the civil action is one made beyond a reasonable doubt in the criminal action and collateral estoppel's requisites are otherwise met.
*1377 The only possible grounds for arguing to the contrary might be a wooden and artificial reading of the traditional mutuality rule, that is, to say that, whereas the defendant, here John S. Jordan, was in a similar posture in both the criminal prosecution and in today's action, the party proceeding against him in a criminal action was the State of Mississippi in its prosecutorial capacity, while here his party opponent is Marie Redus. Of course, in the criminal action Marie occupied a like status, one we frequently label prosecutrix or prosecuting witness. Common sense suggests that there is enough of an identity of the parties in the two cases so that there is no rational reason for refusing to apply collateral estoppel here on grounds of lack of mutuality.
There is a further consideration before we finally credit the findings at Jordan's criminal trial. We must be satisfied that he was adequately represented by counsel. As we say this we imply more than the minimal standards we associate with Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and progeny. Upon review of Jordan's criminal rape trial, we have found defense counsel well above the bare minimum in performance. We note further that we have this day denied Jordan's claim for post-conviction relief wherein he argues ineffective assistance of counsel. Jordan v. State (Miss. No. 90-M-201, dec. Dec. 19, 1990) (not yet reported).
In sum, we hold Jordan collaterally estopped to relitigate the fact issue whether he raped Marie. This holding makes moot all issues Jordan tenders that go to fault. Because Jordan presents no issue going to causation, we affirm so much of the judgment below as holds Jordan liable to Marie in tort.

VI.

A.
Jordan questions the quantum of damages the jury awarded Marie. If we understand him correctly, his broadside challenges both the $380,000.00 compensatory damages award and the $50,000.00 punitive damages assessment.
The evidence reflects that the March 30, 1984, assault had a substantial and adverse effect on Marie and her life-style. She testified at length as to her humiliation and embarrassment, her fears and neuroses, that she began drinking heavily after the event. Marie's mother and three friends also gave testimony in support of the adverse effect she had experienced. Beyond this, Dr. Raymond Overstreet, Marie's psychiatrist, testified that she suffers Post-Traumatic Stress Syndrome, has nightmares, re-experiences intrusive thoughts about the rape at any time; she re-experiences trauma; she is afraid to be alone and makes every effort to avoid being by herself; she carries and sleeps with a gun; it is difficult for her to be in public and she always looks for danger.
He further testified that generally people with Post-Traumatic Stress Syndrome avoid being in places which remind them of the event which triggered this reaction. Their emotions become numbed and their emotional range is restricted. They become more irritable and overreact to frightening or startling situations. They always are on the lookout for danger and physically relive their trauma when in stressful situations. These symptoms continue in varying degrees for the rest of the person's life. He testified that Marie had withdrawn for a period and stayed to herself to avoid similar situations, and she used alcohol to numb her feelings. He further stated that rape affects a woman's self-esteem. The rape victim continually wonders what she could have done to prevent it. As noted, Dr. Overstreet found that Marie fit the profile.
Before the rape, Marie had seen herself as independent, tough, competent, and able to care for herself. After the rape, she saw herself as very vulnerable, powerless, and without control over herself. She experienced depression, became withdrawn, had crying spells and had suicidal thoughts. She had concerns about whether she would ever be able to marry and have *1378 children. It had affected her sexual image and she could no longer enjoy sex.
Dr. Overstreet testified that, although Marie will learn to cope with all of this through counselling, she would never be over it completely. It will affect her for the rest of her life. She will periodically have to use Halcion to sleep. At a minimum she will need treatment every other week for at least a year. Dr. Overstreet's rates are $85 for fifty minutes.
In an action for assault and battery the plaintiff may recover not only for all pecuniary losses and physical injuries sustained in the assault but, as well, for mental and emotional trauma proximately caused thereby. See First National Bank v. Langley, 314 So.2d 324, 328-39 (Miss. 1975). The measure of such damages in a case like this is particularly difficult because there is no way we can, with precision, identify a monetary equivalent for the value of the mental pain, suffering, humiliation and stress Marie has experienced. What is important is that we not forget that, even more so than in a case of malicious prosecution
The very nature of the tort is such that, when committed, it will inflict mental anguish and emotional distress upon the Plaintiff. This is one of the major elements of injury or loss ... the victim... will suffer and for which she will be entitled to redress.
Roy Oil Co. v. Wells, 500 So.2d 439, 448 (Miss. 1986).
While this does not mean we should open the door to any verdict the jury may return, we must not be grudging in the awards we will affirm. In the end, we test the award by the familiar standard of whether it "evinces such bias, passion or prejudice on the jury's part as to shock the conscience." Kern v. Gulf Coast Nursing Home of Moss Point, Inc., 502 So.2d 1198, 1201 (Miss. 1987); James Reeves, Contractor, Inc. v. Chain, 343 So.2d 1229, 1232 (Miss. 1977); Walton v. Scott, 365 So.2d 630, 632 (Miss. 1978). In applying this test we consider the evidence in the light most favorable to the plaintiff along with all reasonable favorable inferences. If under these considerations, no reasonable juror could have concluded from the evidence presented that the plaintiff's damages were in the amount awarded, then the award is excessive. Otherwise, we may only affirm. Royal Oil Co., Inc. v. Wells, 500 So.2d 439, 449 (Miss. 1986); Berryhill v. Byrd, 384 So.2d 1026 (Miss. 1980); Snowden v. Osborne, 269 So.2d 858 (Miss. 1972).

B.
It is established that exemplary or punitive damages may also be assessed in the case of a violent and unprovoked assault and battery. Vanderslice v. Shoemake ex rel. Dabbs, 233 Miss. 523, 102 So.2d 804 (1958); Anderson v. Jenkins, 220 Miss. 145, 70 So.2d 535 (1954). We do not consider the $50,000.00 awarded here to be out of line, given Jordan's cruelty and the degrading experience he inflicted upon Marie. The Circuit Court committed no abuse of discretion in refusing to order a remittitur. See Barnes v. Town of Burnsville ex rel. Till, 385 So.2d 623 (Miss. 1980).
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
NOTES
[1] On the present appeal the Defendant makes no challenge to the sufficiency of the evidence on the issue of liability. We pretermit further details of the assault.
[2] The criminal indictment was called for trial on February 5, 1987, at the conclusion of which the jury found Jordan guilty as charged. The Circuit Court sentenced Jordan to serve a term of fourteen years imprisonment and to pay a fine of $10,000.00. See Miss. Code Ann. § 97-3-65(2) (1972) (as amended). On May 17, 1989, this Court affirmed, Jordan v. State, 543 So.2d 191 (Miss. 1989) (memorandum of decision, not designated for publication), see Rule 35, Miss.Sup.Ct.Rules. On December __, 1990, this Court denied Jordan's application for post-conviction relief.
[3] Jordan has since excluded many more. In his application for post-conviction relief, Jordan states that he had undergone a vasectomy before March 30, 1984. The lab reports of Marie's post-rape examination revealed seminal fluid with type A blood but no sperm. See Jordan v. State (Miss. No. 90-M-201, dec. Dec. 19, 1990) (not yet reported).