IN THE COURT OF APPEALS

8/12/97

OF THE

STATE OF MISSISSIPPI

NO. 95-CA-00551 COA

WILLIAM E. CATLEDGE APPELLANT

v.

DONALD SIMMONS APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. RICHARD WAYNE MCKENZIE

COURT FROM WHICH APPEALED: FORREST COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: SORIE S. TARAWALLY

ATTORNEY FOR APPELLEE: WILLIAM H. JONES

NATURE OF THE CASE: MALICIOUS PROSECUTION

TRIAL COURT DISPOSITION: SUMMARY JUDGMENT ON LIABILITY; JURY VERDICT OF $170,000 ACTUAL DAMAGES, $5,000 PUNITIVE DAMAGES

MOTION FOR REHEARING FILED: 8/26/97

CERTIORARI FILED: 10/17/97

MANDATE ISSUED: 12/17/97

BEFORE McMILLIN, P.J., HERRING, AND KING, JJ.

HERRING, J., FOR THE COURT:

This appeal follows a jury verdict and judgment in the sum of $175,000 which was rendered in the Circuit Court of Forrest County against William E. Catledge and in favor of Donald Simmons. Catledge, the Appellant, is a practicing attorney. The judgment rendered against him by the trial court involved a claim by Simmons that Catledge, in representing a former client, maliciously filed and prosecuted a meritless claim against Simmons for an improper purpose. Catledge now appeals to this court and assigns the following errors.

I. THE ACTION IS BARRED BY THE ONE YEAR STATUTE OF LIMITATIONS CODIFIED IN MISSISSIPPI CODE ANNOTATED SECTION 15-1-35 (1972) AS AMENDED.

II. THE COURT COMMITTED PREJUDICIAL ERROR IN SUSTAINING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN EXCLUDING DEFENDANT'S EVIDENCE.

IV. THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT A CONTINUANCE TO ALLOW RECENTLY RETAINED COUNSEL AN OPPORTUNITY TO PREPARE FOR TRIAL.

V. THE VERDICT OF THE JURY IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, EXCESSIVE AND NOT SUPPORTED BY THE EVIDENCE.

After a complete review of the record and an analysis of the legal issues involved, we conclude that this action should be reversed and remanded for a new trial.

## I. THE FACTS

William E. Catledge, the Appellant, graduated from law school in 1984. Thereafter, he served as a law

clerk for the Mississippi Supreme Court until the latter part of 1986, when he opened a law office in Grenada, Mississippi. In September, 1986, Eugene Purvis Short, a former professional basketball player, requested that Catledge represent him in a contract dispute involving Short and Donald Clyde Simmons. This dispute arose as a result of a business relationship between Simmons, the Appellee in this case, and Short. Simmons was a timber dealer, or broker, with wood yards in both Macon and Scooba, Mississippi, and Mrs. Simmons, the wife of the Appellee, managed the Scooba wood yard. Short became a timber hauler after his basketball career ended and hauled timber to the Simmons wood yards for approximately two years. During this period, Short would usually haul wood, which belonged to private landowners or other third parties, to Simmons, and Simmons would typically make out two payment checks: one check for the timber owner and a second check for Short, the timber hauler.

As time passed and Simmons gained confidence in Short, he began to hire Short to transport timber which Simmons purchased from third parties. He also financed Short's purchase of certain items, such as chain saws and tire repair equipment, which Short needed to operate his timber hauling business. Simmons also sold Short a "prehauler," which is a piece of machinery used to extract felled timber from the forest to the awaiting logging trucks. The total indebtedness due from Short to Simmons grew to the sum of $17,000 by May 1984, and Short was to repay Simmons over a three-year period by allowing Simmons to deduct, on a monthly basis, the sum of $4.00 per cord of wood hauled by Short to the Simmons wood yards. In addition, Short gave Simmons security interests in the prehauler, four motor vehicles and other equipment used by Short in his hauling business.

The original agreement between Simmons and Short took place on or about May 31, 1984. Short defaulted in his payments a few weeks later when Short's hauling business shut down due to the fact that his prehauler became immobilized with a burned out motor. When this happened, Short apparently left Mississippi, abandoned the prehauler, all of his equipment, and vehicles, and made no further monthly payments to Simmons. Thereafter, Simmons seized the prehauler, the motor vehicles, and all other equipment in which he had a security interest through his agreement with Short. The Appellee then spent several thousand dollars reworking the prehauler and sold off all of the items seized from Short. When the proceeds of the sale were applied to Short's indebtedness to Simmons, the balance of the debt was reduced to $10,222.95, after payment of all expenses. Unknown to Simmons, Short had engaged in a clandestine affair with Mrs. Simmons during the period of time leading up to his abandonment of the prehauler and other equipment.

At some point after he became aware that Simmons had seized his equipment and motor vehicles, Short wrote a letter to Mrs. Simmons and threatened to make their affair public unless her husband returned the seized items to him. On another occasion, Simmons, who was already aware of his wife's infidelity, discovered his wife talking to Short by telephone, took the telephone from her, and hung up on Short a few moments later. Thereafter, during September of 1986, Short contacted William Catledge and hired him as his attorney to recover the prehauler and motor vehicles. At this point, Catledge had been in the private practice of law for less than one month.

On September 19, 1986, Catledge wrote the following letter to Donald Simmons:

Dear Mr. Simmons:

Please be advised that this office has been retained by Eugene Short. This representation concerns the agreement entered into by and between you and Mr. Short, dated May 31, 1984. This office wants a clear and detailed explanation of why you took the pulpwood prehauler, which was the security involved in this agreement, and also took certain automobiles owned by Mr. Short. I am convinced that Mr. Short has a "can't miss" civil suit against you; however, the way you went about taking the automobiles from Mr. Short, we may be forced to file criminal charges against you. Those vehicles should be released to Mr. Short immediately. If those vehicles are not released to Mr. Short, <u>ALL</u> OF THE UNTOLD FACTS AND CIRCUMSTANCES will be made public. I know you do not want this.

Therefore, if I have not received written approval from you within ten (10) days of the above date that you are releasing the aforesaid automobiles to Mr. Short, I WILL IMMEDIATELY FILE SUIT AGAINST YOU AND YOUR WIFE IN THE NOXUBEE CIRCUIT COURT.

Sir, your cooperation will not only be appreciated, but will be expected.

If there are questions or comments, please feel free to contact me.

Very truly yours,

William E. Catledge

Attorney for Eugene Short

(Emphasis in original).

Simmons claims that by threatening to make public "ALL OF THE UNTOLD FACTS AND CIRCUMSTANCES," Catledge and Short were using the threat of a lawsuit for the improper purpose of exposing Short's affair with Mrs. Simmons in order to extort money from Simmons.

## NOXUBEE COUNTY ACTION

Subsequently, on October 27, 1986, Catledge filed suit in the Circuit Court of Noxubee County, Mississippi, against Donald Simmons for and on behalf of Eugene Short, alleging breach of contract. In response, Simmons filed an answer and a counterclaim requesting a judgment for the balance of Short's indebtedness to him. In addition, Simmons ultimately filed a motion for summary judgment and a motion seeking attorney's fees, pursuant to Mississippi Rules of Civil Procedure 11 and 37 and Mississippi Code Annotated § 11-55-1 (1972), because of various discovery abuses, and because the entire claim was meritless and filed in bad faith without legal or factual foundation. Catledge states that soon after Simmons filed his answer and counterclaim, Short lost interest in the case, terminated

the Appellant as his attorney, and left the state, leaving no forwarding address. Thereafter, various discovery requests by Simmons, including requests for admissions, went unanswered.

On February 23, 1990, the Circuit Court of Noxubee County dismissed Short's complaint against Simmons with prejudice and granted the Appellee's motion for summary judgment. In its order, the court noted that neither Short nor Catledge appeared at the hearing on the motion for summary judgment, and that Catledge simply sent a letter to the circuit clerk saying that he no longer represented Short and would not be attending the hearing. The court further noted that Catledge had not filed for leave to withdraw from the case as attorney for Short. Finally, the Noxubee court reserved for later consideration the counterclaim and other motions filed by Simmons, including the request that sanctions and attorney fees be imposed upon Short and Catledge.

On January 31, 1992, the Noxubee court considered the counterclaim and motion for sanctions and fees filed by Simmons and issued an order granting Simmons a summary judgment on his counterclaim against Short in the sum of $10,222.95 plus interest and costs. Furthermore, in

regard to the motion for the award of sanctions and fees, the court made, *inter alia*, the following findings of fact:

1. Catledge and Short wrote a letter of September 19, 1986 to Don Simmons in bad faith with the intent and purpose of improperly and unlawfully coercing Mr. Simmons to release property;[1]

2. Catledge and Short filed and prosecuted the action in the Noxubee County Circuit Court in bad faith for the improper purpose of coercing Simmons to release the vehicle;

3. Catledge and Short consistently ignored court rules and discovery deadlines, and further failed to set forth any reason for their conduct or any basis for the lawsuit which they initiated;

4. Catledge and Short failed to dismiss a non-existent claim against Simmons;

5. Catledge and Short are therefore jointly and severally liable to Simmons for all expenses and fees expended by Simmons in the defense of the aforesaid action.

The Noxubee County Circuit Court then scheduled an additional hearing for February 21, 1992, to consider the amount of fees and expenses to be paid to Simmons and his counsel and directed Simmons to submit to the court, within ten days from January 31, 1992, a schedule of time spent by Simmons and his counsel in defending the action. A schedule of time and expenses prepared by counsel for Simmons was mailed to the Circuit Clerk of Noxubee County on February 11, 1992. The statement reflected total fees and expenses of $12,754.30. From the record before us, however, it appears that no further hearing was ever conducted on this matter although a final judgment was rendered by the Noxubee County Circuit Court on June 24, 1992, in favor of Simmons. That judgment was never appealed by Short or by Catledge.

## FORREST COUNTY ACTION

Simmons filed the case *sub judice* in the Circuit Court of Forrest County, Mississippi, on December 4, 1992, against both Short and Catledge. In this action, Simmons sought money damages against Short and Catledge for malicious abuse of process, malicious prosecution and intentional infliction of emotional harm resulting from their filing and pursuing the Noxubee County action. As a basis for his claim, Simmons charged that the action in Noxubee County was filed in bad faith for the purpose of extorting and coercing money from Simmons and that the action was dismissed in favor of Simmons with no appeal taken. As a further basis for his claim, Simmons recited that the Noxubee County Circuit Court had made a judicial finding of fact that Catledge and Short had, at all times, acted in bad faith in filing and pursuing a non-existent claim against Simmons, and he requested the Forrest County Circuit Court to take judicial notice of and be bound by the rulings of the Noxubee Court. Finally, Simmons claimed that he had suffered intentional infliction of emotional harm, mental pain and anguish, embarrassment, and humiliation as a result of the actions of Short and Catledge which entitled him to actual and punitive damages. Catledge filed an answer and general denial of the charges on January 22, 1993. Short, however, never filed an answer, and a default judgment was ultimately and correctly entered against him on January 26, 1994, after a proper motion was filed by Simmons and after entry of default by the Forrest County Circuit Clerk.

Prior to entry of the default judgment against Short, Simmons filed a motion on February 18, 1993, for summary judgment against Catledge and Short on the issue of liability. In this motion, Simmons basically recited the prior actions and findings of the Noxubee County Circuit Court and its adjudication that Short and Catledge were guilty of bad faith in filing and pursuing a frivolous and improper claim against Simmons in that court. Simmons further contends that Short and Catledge were collaterally estopped and otherwise barred from denying the findings of Noxubee Court.

Catledge filed a response to the motion for summary judgment on February 24, 1993, in which he simply denied that he filed a frivolous lawsuit against Simmons and acted solely as attorney for Short. Moreover, Catledge stated that he filed the Noxubee County action only after interviews with Short and after making an independent investigation of Short's claim. On the same day, Catledge filed a motion for continuance and requested sixty days to conduct discovery in preparation for the hearing. This motion was granted by the trial court on March 4, 1993.

A telephonic hearing on the motion for summary judgment was later set before the trial court on June 8, 1993. On June 7, 1993, Catledge filed a motion for continuance of this hearing, citing a conflict in his schedule. This motion was also granted by the trial court on June 8, 1993, to a date and time mutually convenient to the parties. The hearing was later scheduled for July 12, 1993.

On June 23, 1993, Simmons filed a motion for a protective order to bar Catledge from engaging in any discovery until the court determined if Catledge was collaterally estopped from relitigating issues previously decided by the Noxubee County Circuit Court. In his motion, Simmons pointed out that the trial court had granted Catledge sixty days to conduct discovery and no discovery had been conducted. Furthermore, Simmons contended that the motion for summary judgment had first been set for hearing on May 17, 1993, and then on June 8, 1993, and that the hearing had been continued

on both occasions at the request of Catledge.

One June 25, 1993, Catledge filed a motion for continuance of the July 12, 1993, hearing on the grounds that he needed to take the depositions of Simmons and his attorney, Victor McTeer, prior to a hearing on the motion for summary judgment. Simmons filed an objection to this motion on June 28, 1993, and charged Catledge with attempting to "delay and deter" the action from proceeding. Catledge filed a response to the objection on July 7, 1993, in which he denied any improper motives

and reaffirmed his desire to take the depositions of McTeer and Simmons. He further cited a conflict in his schedule on the July 12th hearing date.

On July 12, 1993, Catledge filed a motion to dismiss the action filed by Simmons. In this motion he claimed that all actions upon which the complaint was based transpired in 1986 and thus were barred by the "longstanding six year statute of limitations," since all acts upon which the action was based occurred prior to when the Noxubee County lawsuit was filed on October 27, 1986. Furthermore, Catledge claimed that the six-year statute of limitations had not expired when the Noxubee Circuit Court entered its final judgment on June 24, 1992, and that Simmons still had several months to file the present action after June 24 before the six year period ended. Thereafter, on July 19, 1993, Catledge filed a request for production of documents and a request for admissions.

On July 28, 1993, Simmons responded to Catledge's motion to dismiss and contended that the malicious prosecution or abuse of process claim did not arise until the initial claim had been terminated in favor of Simmons on June 24, 1992. Thus, Simmons contended that no statute of limitations problem existed in the case *sub judice*.

A telephonic hearing of the motion for summary judgment was then set for August 12, 1993. Once again, Catledge moved for a continuance, citing scheduling problems. Once more, Simmons objected. The trial court denied the motion by order dated August 9, 1993. On that same date, Catledge filed a motion asking the court to reconsider its order, stating that he would be on vacation from August 9 through August 13, 1993, and would be out of the jurisdiction of the court. This motion was also denied, and a hearing on the motion for summary judgment was conducted on August 12, 1993. The trial court rendered its order concerning the motion for summary judgment on November 29, 1993. In its order the court noted that while Catledge generally denied the allegations of the motion for summary judgment, he filed no affidavits or other evidence to rebut the motion and did not deny that a final judgment had been rendered in Noxubee County Circuit Court. The trial court then noted the delay which occurred prior to the resolution of the motion for summary judgment and that during the hearing on the motion, Catledge requested and received from the court an additional five days to present further documentation with the court. However, no further documentation was ever filed with or presented to the court by Catledge, and the court specifically ruled that Catledge had been given adequate opportunity to respond to the motion for summary judgment. Then the trial court ruled that it was bound by the findings of the Noxubee County Circuit Court and that Catledge and Short were collaterally estopped and otherwise barred from denying the findings of the Noxubee Court. Thus, the trial court granted the motion for summary judgment and found that Short and Catledge:

(1) filed the Noxubee County action and served the complaint maliciously, falsely and without

substantial or other basis in law or fact; and

(2) conspired for the illegal purpose of using the process of the Noxubee County Circuit Court to extort money from the plaintiff.

The trial court further found that the Noxubee County lawsuit was terminated in favor of Simmons and

[t]he Plaintiff, Don Simmons, is therefore entitled to a summary judgment against both Defendants, jointly and severally, on his claims of malicious abuse of process, malicious prosecution and intentional infliction of emotional harm arising from their institution and maintenance of a frivolous legal action against Donald Simmons for the bad faith purpose of extorting and coercing money from Mr. Simmons.

Finally, the trial court then ordered the case to proceed to trial before a jury to determine the amount of damages to be awarded to Simmons.

Catledge filed a motion for interlocutory appeal on December 13, 1993, to which Simmons objected on May 2, 1994. Meanwhile, a default judgment was entered against Short on January 26, 1994. On September 7, 1994, the trial court overruled the motion for an interlocutory appeal, and the case was set for trial on November 15, 1994.

THE TRIAL

The trial of this action took place beginning on November 15, 1994, and all parties, including Eugene Short, were present. Catledge was represented by recently retained counsel who orally requested a continuance, since he had just been hired. This motion was denied. Thereafter, a jury was selected, and Short testified, outside of their presence, that Catledge did not know of Short's affair with Mrs. Simmons until after the Noxubee lawsuit had been filed. He further testified that he abandoned his claim against Simmons after it had been filed and then left the State, leaving Catledge no way of getting in touch with him. Subsequently, both Simmons and Catledge testified, and a jury verdict was rendered against Catledge and Short, and in favor of Simmons, for the sum of $170,000 in actual damages and the sum of $5,000 in punitive damages.

II. ANALYSIS

A. *Did the trial court err in not dismissing this cause of action as barred by the statute of limitations?*

In his first assignment of error, Catledge contends that this action should have been dismissed since it was time-barred by virtue of section 15-1-35 of the Mississippi Code Annotated, as amended.

Section 15-1-35 which has been in effect since 1983, states as follows:

All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of action accrued, and not after.

Simmons claims that his cause of action did not accrue until January 31, 1992, when the Noxubee Circuit Court finally dismissed the claims against him and scheduled a later hearing to consider sanctions. The present action was filed on December 4, 1992. There is no doubt that this code section applies to the malicious prosecution claim filed by Simmons and that Simmons had one year to file his claim after his cause of action accrued. *Bankston v. Pass Road Tire Center, Inc.,* 611 So. 2d 998, 1003 (Miss. 1992). However, a statute of limitations defense, such as section 15-1-35, must be affirmatively pled or else it is waived. M.R.C.P. 8(c). *See also Sears, Roebuck & Co. v. Devers,* 405 So. 2d 898, 900 (Miss. 1981).

In this case, Catledge did not assert a statute of limitations defense in his answer although he did raise an unspecified "six year" statute of limitations as justification for his motion to dismiss this proceeding. The motion to dismiss was filed on July 12, 1993, after Simmons had filed his motion for summary judgment. It is arguable whether the trial court could have considered the motion to dismiss based upon a statute of limitations on affirmative defense, although the defense was not made a part of Catledge's answer. *See* Wright & Miller, *Federal Practice and Procedures: Civil* 2d § 1278. Nevertheless, we find that Catledge waived any defense which he might have had pursuant to Section 15-1-35 when he failed to raise such a defense either by amending his answer or by failing to specify the one year statute as a defense in his motion to dismiss. Thus, even if we were to hold that Catledge's plea of a statute of limitations defense in his motion to dismiss was valid, he would still be barred from relying on the one year statute of limitations because he cited the wrong statute of limitation. *See In the Matter of the Estate of Miller v. Miller*, 409 So. 2d 715, 718 (Miss. 1982) (pleading an incorrect statute of limitation does not preserve the correct limitations argument). In that case, the Mississippi Supreme Court stated:

In *Bridgforth v. Payne*, 62 Miss. 777 (1885), the appellant pled the bar of the six-year statute of limitations when he should have pled another statute of seven years. The Court stated:

The appellant having relied upon a statute not applicable, cannot invoke the protection of another not pleaded. A party who pleads or replies to a statute of limitations not appropriate to the action must abide the result.

The above state of the law is a viable principle today.

*Miller,* 409 So. 2d at 718 (citations omitted). *See also* 54 C.J.S. *Limitations of Actions* § 282 (1987) which states, in part:

Where a statute of limitations or prescription is pleaded which is not applicable to the cause of action claimed to be barred, the plea is bad, and as a general rule the protection of another statute which is not pleaded cannot be invoked. It has also been held that a shorter period of limitation cannot be invoked where a statute containing a longer period is pleaded.

We are further of the opinion that even if Catledge had raised Section 15-1-35 in his motion to dismiss, and the trial court had treated his motion as an affirmative defense, the statute of limitations issue was not raised in a timely fashion since it was filed while the motion for summary judgment filed by Simmons was pending. *See Bell v. First Columbus Nat'l Bank,* 493 So. 2d 964, 968 (Miss. 1986) (involving a party who attempted to raise an affirmative defense for the first time during the course of a trial and later on motion for judgment notwithstanding the verdict). In *Bell*, our supreme court held that the defense was raised too late. *Bell,* 493 So. 2d at 968.

*B. Did the Trial Court Err in Sustaining Plaintiff's Motion for Summary Judgment?*

As stated above, the trial court granted the motion for summary judgment filed by Simmons and held that Catledge was collaterally estopped and otherwise barred from denying the findings of the Noxubee County Circuit Court, to-wit:

1. Catledge and Short wrote a letter dated September 19, 1986, to Don Simmons in bad faith with the intent and purpose of improperly and unlawfully coercing Mr. Simmons to release certain property to Short;

2. Catledge and Short filed and prosecuted the action in the Noxubee County Circuit Court in bad faith for the improper purpose of coercing Simmons to release the vehicles.

Moreover, the trial court ruled that since the Noxubee County action was terminated in favor of Simmons, no genuine issue of material fact remained for the jury's consideration.

The Mississippi Supreme Court has held on numerous occasions that an appellate court

exercises de novo review on a trial court's decision to grant summary judgment. Rule 56(c) of the Mississippi Rules of Civil Procedure allows summary judgment where there are no genuine issues of material fact such that the moving party is entitled to a judgment as a matter of law. To prevent the trial court's grant of summary judgment, the non-moving party must establish a genuine issue of material fact. If there are any genuine issues of material fact proven, the lower court's decision to grant summary judgment will be reversed.

*See Moon v. Condere Corp.,* 690 So. 2d 1191, 1194 (Miss. 1997) (citations omitted).

The primary issue before the court on this assignment of error is obviously whether or not the doctrine of collateral estoppel applied in the case *sub judice*. The trial court ruled that the doctrine did apply and, thus, found that Catledge was liable to Simmons in regard to the Appellee's malicious prosecution claim. Finally, the trial court held that the only issue for the jury to consider was the issue of damages, since Catledge was collaterally estopped from denying liability. Issues on appeal which deal with questions of law will be reviewed *de novo* by the appellate court. Furthermore, we must reverse if the lower court made an erroneous interpretation or application of the law. *Mississippi*

*Transp. Comm'n v. Fires,* 693 So. 2d 917, 920 (Miss. 1997). Adopting this standard, we must determine if the trial court was correct in its ruling that the doctrine of collateral estoppel was applicable in this action.

The requirements for the application of the doctrine of res judicata and its subsidiary doctrine, collateral estoppel, are found in *Dunaway v. Hopper & Assoc., Inc.,* 422 So. 2d 749, 751 (Miss. 1982) and *Hollis v. Hollis*, 650 So. 2d 1371, 1377-78 (Miss. 1995). As stated in *Hollis:*

When collateral estoppel is applicable, the parties will be precluded from relitigating a specific issue (1) actually litigated, (2) determined by, and (3) essential to a judgment in a former action, even though a different cause of action is the subject of the subsequent action . . . .

*Hollis,* 650 So. 2d at 1377. In addition to the above three requirements outlined in *Hollis*, a fourth prerequisite must also be met for collateral estoppel to apply. "A final decision of an issue on its merits is normally thought of as preclusive only if there is an identity of parties from one suit to the next, and of their capacities as well. *State ex rel. Moore v. Molpus,* 578 So. 2d 624, 640 (Miss. 1991) ." *Hollis,* 650 So. 2d at 1377-78.

The necessity that identical parties be involved in both actions was reinforced in *Norman v. Bucklew,* 684 So. 2d 1246, 1254 (Miss. 1996) where our supreme court stated:

Much has been written in our decisions about collateral estoppel, . . ., but this much should be clear: in the absence of passing technical muster of the previous action involving identical parties, identical legal issues, and the same facts required to reach a judgment, it cannot be applied. And *even where it arguably meets a technical muster, "the rule is neither mandatory nor mechanically applied." Jordan v. McKenna*, supra, 573 So. 2d 1371 at 1375.

(Emphasis added).

It is also important to note that in the *Norman* case, the supreme court observed that collateral estoppel should only be viewed as an "'unusual exception to the general rule that all fact questions should be litigated fully in each case' and '[w]here there is room for suspicion regarding the reliability of those first fact findings, collateral estoppel should never be applied.'" *Id.* at 1253 (quoting *Mississippi Employment Sec. Comm'n v. Philadelphia Mun. Separate School Dist.,* 437 So. 2d 388, 397 (Miss. 1983)).

The elements necessary to prove liability as a result of malicious prosecution are as follows:

(1) The institution or continuation of original judicial proceedings, either criminal or civil;

(2) By, or at the insistence of the defendants;

(3) The termination of such proceedings in plaintiff's favor;

(4) Malice in instituting the proceedings;

(5) Want of probable cause for the proceedings; and

(6) The suffering of damages as a result of the action or prosecution complained of.

*Junior Food Stores, Inc. v. Rice*, 671 So. 2d 67, 73 (Miss. 1996). Following the requirements of *Dunaway v. Hopper & Assoc., Inc.,* we must determine whether in the case *sub judice*, Catledge was attempting to relitigate a specific issue actually litigated in the Noxubee court, and also determined by, and *essential* to the judgment in the Noxubee court. In addition, following the requirements of *Hollis v. Hollis* and *Norman v. Bucklew*, we must also determine if there is an identity of the parties from one suit to the next, and if the capacity of each of the parties is identical as well. The answer to the last question is determinative in regard to the issue before us. We hold that there is no identity of parties as required by the *Hollis* and *Norman* cases, since Catledge was not a party to the Noxubee County action. In the Noxubee case, Catledge served only as the attorney for Short. While it is true that sanctions were imposed upon Catledge by the Noxubee County circuit judge pursuant to Mississippi Rules of Civil Procedure 11 and 37, and by virtue of section 11-55-1 of the Mississippi Code of 1972, Catledge was only participating in the Noxubee case as a representative of Short. As stated in *McIntosh v. Johnson,* 649 So. 2d 190, 194 (Miss. 1995) and the *Restatement (Second) of Judgments § 36* (1982), the doctrine of collateral estoppel does not apply where a party appears in one action as the representative of another and in an individual capacity in a second action. *McIntosh,* 649 So. 2d at 195. Moreover, it is obvious that the imposition of sanctions and the findings of fact justifying those sanctions upon Catledge were not essential to the judgment rendered in the Noxubee County Circuit Court, since the action and the counterclaim filed by the parties dealt with the contractual dispute between Simmons and Short. *See generally Marcum v. Mississippi Valley Gas Co., Inc.,* 672 So. 2d 730, 733-35 (Miss. 1996).

It is noteworthy that a number of courts in other jurisdictions have ruled that the doctrines of res judicata and collateral estoppel are inapplicable in malicious prosecution cases following either an award or denial of sanctions pursuant to Rule of Civil Procedure 11, or some version of Mississippi's litigation accountability act. *See Plus Int'l, Inc.* v. *Pace,* 689 So. 2d 160, 162 (Ala. Civ. App. 1996); *Robinson v. Eng,* 148 F.R.D. 635, 637 (D. Neb. 1993); *Henley v. Ogle*, 1993 WL 360453, *1 (Tenn. App. 1993); *Cohen v. Lupo,* 927 F.2d 363, 365 (8th Cir. 1991); and *Amwest Mortgage Corp. v. Grady*, 925 F.2d 1162 (9th Cir. 1990). As the *Amwest* court stated:

However, assuming that elements of the Rule 11 test and a malicious prosecution action are identical, simply identifying an issue in one case as the same as that in another does not entitle a party to the benefits of injunctive relief. "One general limitation the Court has repeatedly recognized is the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen v. McCurry,* 449 U.S. 90, 95 (1980).

*Amwest,* 449 U.S. at 1164. The *Amwest* court went on to hold that the Rule 11 proceedings did not provide a full and fair opportunity to litigate the issue and denied the use of collateral estoppel.

Thus, we find that this action must be reversed and remanded for a full trial on the merits, including all issues involving liability and damages. Other issues raised on appeal by Catledge are moot in light of our decision to remand this action for a new trial. In rendering this decision, the Court in no way intends to comment on the merits of the action filed by Simmons against Catledge. **THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY GRANTING SUMMARY JUDGMENT AND DAMAGES TO APPELLEE IS REVERSED. THIS CAUSE OF ACTION IS REMANDED TO THE CIRCUIT COURT OF FORREST COUNTY FOR A FULL TRIAL ON THE MERITS CONSISTENT WITH THIS OPINION. ALL COSTS ARE TO BE TAXED TO THE APPELLEE.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**

1. In this regard, Catledge invoked his Fifth Amendment rights when asked by the court what he meant when he wrote that "UNTOLD FACTS AND CIRCUMSTANCES" would be made public.