GREEN *v.* BROWN.

(Division A. March 16, 1931.)

[133 So. 153. No. 29241.]

Frank E. Everett and Oscar B. Townsend, both of Indianola, for appellant.

S. D. Neill, of Indianola, for appellee.

McGowen, J., delivered the opinion of the court.

The appellant, Green, filed his declaration against L. P. Brown in two counts, in which he sought to recover damages for the sale by Brown to him of "Fluid Extract of Ginger" as a beverage in violation of the criminal statutes of the state. The first count charged negligence per se in the violation of the statute, and that by reason of the purchase of said ginger for beverage purposes and the drinking of same by the said appellant, he became paralyzed from the effects thereof. The second count is based upon about the same facts, except that the

pleaders seem to charge both an implied and an express warranty on the part of the appellee in the sale of the ginger to the appellant as a beverage, and to also charge that the appellee sold the ginger as a good and wholesome drink and recommended it as such, when, in truth and in fact, it was unwholesome and unfit to drink, and contained some harmful ingredients which caused the appellant to become paralyzed in his lower limbs.

The appellee filed pleas of the general issue to both counts.

At the conclusion of appellant's evidence, the court below gave a peremptory instruction for the appellee, the defendant, on the ground that the parties hereto were in pari delicto in the unlawful sale of the ginger in question in violation of sections 2021 to 2024, inclusive, Code 1930, in which appellee was the seller, and appellant, the purchaser, both parties knowing that the ginger was to be used as a beverage, and that it would produce intoxication.

The facts essential to a decision of the case here are briefly stated as follows: Brown was a druggist in Moorhead. Green was in his drug store at a time when one Parker purchased "Extract of Ginger" from Brown, and according to Green's testimony, Brown assured Parker, in his presence, upon Parker's tasting the same and remarking that it did not taste as other ginger had that he had theretofore drunk, in the following language: "The boys all say it is the best we have ever had, I will guarantee it to be good." "Whereupon Green, the appellant, purchased two bottles in the original container and drank it. He testified that subsequent to that time he had not drunk any other Jamaica ginger. Five or six days later the appellant noticed that his lower limbs were sore, and four or five days after that time the pain became so severe that he had to hold himself up with a stick, and he gradually lost control of his lower limbs.

At the time of the trial he could scarcely "get around," and he testified that the Jamaica ginger bought from the druggist Brown for beverage purposes produced that result after he had drunk it.

Dr. Donald testified that from the history of the case given him by Green as to his condition some two or three weeks subsequent to the purchase and sale of the extract of ginger, that the appellant was suffering from what is commonly called "Jake" paralysis, which he denominated peripheral neuritis, alcohol paralysis. The doctor testified that the appellant, Green, told him that he had drunk "punch or orange peel or lemon peel, something like that," and he also testified that there must have been poison in the extract of ginger drunk by the appellant to have produced his condition. There was no question but that the liquid was intoxicating, that Green purchased it, and Brown sold the ginger as a beverage; and on account of its intoxicating effect one of the bottles was labeled: "Deco. Fluid Extract Ginger U. S. P. Alcohol by volume not over 83%. Can be used successfully in relieving cramps and as a stimulant is an aid in breaking up colds. 10 drops diluted in a half glass of water to be taken every hour until relieved. Sale or use as a beverage will make vendor or user liable. Davis & Co. St. Louis, Mo."

There is no proof, in this record, of the contents of the liquid; no analysis was offered in evidence; and there is nothing to show that the appellee handled it in any other way than is usual in a drug store having proprietary, patent medicines, except that he sold it for beverage purposes and not as a medicine.

The brief of appellant only presents the bare question to be decided by this court that the parties, purchaser and buyer, were not in pari delicto, for the reason that the buyer is not penalized by the statute to which we have made reference, and only the seller is guilty of a

violation of that law. There is no proof of any knowledge on the part of Brown as to the contents of the liquid sold by him. Nor is there proof that this brand of extract of ginger had produced a similar result on any other human being after having been drunk; so that the question of negligence is not here considered by the court for the reason that the appellee is not shown to have been guilty of any negligence as a retail dealer in selling the beverage in the original package or container, and we make no decision upon any question of negligence that might arise when the facts and circumstances show negligence.

The very interesting question of whether or not the dealer who retails to the consumer proprietary medicine in the original package unopened, or food in cans in the original package, is liable upon an implied warranty in any event, is not discussed in the briefs of counsel; so we do not decide in this case that important question. However, we are not unmindful of the fact that in the case of Pillars v. R. J. Reynolds Tobacco Co. et al., 117 Miss. 490, 78 So. 365, where a human decomposed toe was found concealed in a piece of chewing tobacco and poisoned an ultimate consumer, the manufacturer was liable on an implied warranty, and the distributor was not considered in not discovering such impurity concealed in the chewing tobacco which poisoned the ultimate consumer. The court there merely said that the distributor could not have suspected that a human toe was concealed in the plug, and was not negligent in not discovering the unusual contents of the plug; and that is all the court said about the question. We merely call attention to this decision in order that it may be known that it is not overlooked by us.

Conceding that there is no negligence shown in this record other than that which arises from an implied warranty, and conceding that a dealer would be held liable

on such implied warranty for selling the extract in the original package as a beverage which, when drunk to excess, will produce intoxication in violation of the criminal statutes of the state, can the buyer hold the seller here liable on an implied warranty? We do not think so.

The argument presented by the appellant, that because the buyer is not guilty of a violation of the criminal statute he is, therefore, not in pari delicto, is precisely the question settled by this court in Grapico Bottling Co. et al. v. Ennis, 140 Miss. 502, 106 So. 97, 98, 44 A. L. R. 124. The appellant partly assumes the position found in the dissenting opinion in that case. There the manufacturer was sued on an implied warranty by one Ennis, who bought a bottled drink in which there were flies and became sick from drinking the same. The sale was begun and consummated on the Sabbath day; the buyer was not penalized by the statute. The seller violated the criminal law in that behalf, and this court said: ''We are also of the opinion that there was no liability, or at least that the plaintiff had no right of action, because he was in pari delicto in a transaction involving a violation of'' the Sunday-law sections in the Code. The court further said: ''Before the manufacturer in this case was liable to any person for a breach of its warranty of the fitness and purity of its drink, the party injured thereby must have some kind of rightful possession of the drink. The implied warranty runs with the sale and passes with the title, and where the sale as in this case is made void by the statute, and where he is a participant in the sale, he cannot recover, although the statute makes the crime, apparently, apply to the seller alone. His action in making the purchase is illegal. It violates both secular and sacred laws in doing so, and the courts will not give him relief for injuries he suffered in so doing, where the injury is brought about by his own illegal act,

or an illegal act in which he is a joint participant voluntarily." This language fits the case at bar exactly; the only difference being that in the case of Grapico Bottling Co. v. Ennis, supra, the Sunday law was violated, while in this case the prohibition law is violated. The courts of law and of equity are not open to parties voluntarily participating in an illegal contract in violation of the statutes and the public policy of this state. The courts are not organized for the purpose of extricating evildoers, so far as the law and public policy of the state are concerned, from the situation into which they place themselves by their illegal acts, and the courts have no special regard for those who defend on the ground of their own illegality; but the principle is invoked in order that the active participants in a violation of the law, both being equally at fault in the commission of an illegal act and without their concurrent action there could be no illegal contract, should not have the right to appeal to either the courts of law or of equity for relief from their contract so made, whether express or implied, or from any damages which may flow from a breach thereof. The principle is illustrated in 9 Cyc. 560, note 96: "Two men enter into a conspiracy to rob on the highway, and they do rob, and while one is holding the traveler the other rifles his pockets of one thousand dollars, and then refuses to divide, and the conspiring party files a bill to settle up the partnership, when they go into all the details of the conspiracy and the rencounter and treachery. Will a court of justice hear them? No case can be found where a court has allowed itself to be so abused." In the case of Woodson v. Hopkins, 85 Miss. 171, 37 So. 1000, 38 So. 298, 70 L. R. A. 645, 107 Am. St. Rep. 275, where the lender of money at extortionate rates of interest and by contracts void as against public policy established an agency in charge of defendant, who subsequently claimed the business as his own and refused to account, his princi-

pal could not maintain a bill to recover the money nor to have relief in respect to the illegal contract and transactions, in which case Judge WHITFIELD analyzed the authorities and demonstrates the soundness of the rule. We call attention to the authorities there cited. The contract was void, and an action by one of the parties to it, a necessary adjunct to the completion of the violation of the law, although he is not rendered guilty and penalized therefor by the criminal statute, nevertheless cannot maintain an action on the illegal contract. The rule announced here applies only to this case as to an implied or express warranty.

Affirmed.