# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00344-COA

**CHARLES BOLTON AND LINDA BOLTON**                    **APPELLANTS**

**v.**

**JOHN LEE, P.A., THE ESTATE OF JOHN W.**              **APPELLEES**
**LEE, JR., BANCORPSOUTH BANK AND**
**STACEY HALL**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/25/2020 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | PAUL HARDIN HOLMES |
| | MARCUS ALAN McLELLAND |
| | CORY NATHAN FERRAEZ |
| | MARY LEE HOLMES |
| ATTORNEYS FOR APPELLEES: | SIMON TURNER BAILEY |
| | DAVID W. MOCKBEE |
| | MARK A. NELSON |
| | JOHN ALEXANDER PURVIS |
| | DAVID WESLEY MOCKBEE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 01/10/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., LAWRENCE AND McDONALD, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     After Charles and Linda Bolton were convicted in federal court of tax fraud and tax evasion, they sued attorney John Lee Jr.,[1] John Lee P.A., BancorpSouth Bank, and BancorpSouth employee Stacey Hall in state court, alleging that the defendants' actions or

---

[1] John Lee Jr. died on October 27, 2021, while this appeal was pending. Lee's estate was substituted as a party to this appeal in his place.

inactions led to the Boltons' criminal convictions.  The court dismissed the claims against BancorpSouth and its employee for failure to state a claim upon which relief could be granted.  Summary judgment was granted in favor of Lee and John Lee P.A. on the basis that the Boltons were collaterally estopped from bringing a civil suit based on the same set of facts as their criminal convictions.  The Boltons appeal.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

### 1. Federal Court Proceedings

¶2.    In March 2014, the Federal Bureau of Investigation and Mississippi State Auditor's Office began investigating the Boltons after it was suspected that the Boltons and others were stealing food from the Forrest County Juvenile and Adult Detention Center.  At the time, Charles was chief deputy sheriff of the Forrest County Sheriff's Office and oversaw the detention center.  In 2015, the FBI alerted the Internal Revenue Service to several suspicious checks related to two businesses owned and operated by the Boltons, Hall Avenue Package Store and Sports 22 Café and Lounge.  A criminal tax investigation began, which resulted in a ten-count indictment in March 2016 against the Boltons for attempted tax evasion and aiding and abetting in attempted tax evasion for the years 2009 through 2013 (Counts 1-5) and filing false tax returns and aiding and abetting in the filing of false tax returns for the years 2009 through 2013 (Counts 6-10).[2]

¶3.    In September 2016, a three-day jury trial was held in the United States District Court

---

[2] No charges were brought against the Boltons based on the food-theft investigation, but it was deemed relevant for sentencing purposes and calculation of the amounts of loss and restitution in the tax matter.  *United States v. Bolton*, 908 F.3d 75, 85 n.2 (5th Cir. 2018).

for the Southern District of Mississippi. "[T]he government presented evidence that the Boltons treated money received by their two businesses as 'loans' rather than 'income' when reporting their business income on their personal income tax returns, . . . thus falsely reducing their tax liability." *United States v. Bolton*, 908 F.3d 75, 86 (5th Cir. 2018). The amounts in question included checks from Lee. *Id.* The jury found Charles guilty of four counts of attempted tax evasion and five counts of filing false tax returns and Linda guilty of five counts of filing false tax returns. *Id.* at 84. On March 17, 2017, Charles was sentenced to forty-five months of imprisonment and "three years of supervised release with a special condition requiring payment of $145,849.78 in restitution and a $10,000 fine." *Id.* Linda was sentenced to "[thirty] months of imprisonment, with a one-year term of supervised release, a $6,000 fine, and restitution of $145,849.78, owed jointly and severally with Charles." *Id.* The Boltons filed multiple motions for a new trial, all of which were denied.

### 2. State Court Proceedings

¶4. Following their federal convictions, on April 26, 2017, the Boltons filed suit in the Forrest County Circuit Court against Lee and John Lee P.A., alleging tortious interference with contracts and agreements between the Boltons and their accountants; "[i]nducement, [a]iding and [a]betting [b]reach of [f]iduciary and [o]ther [d]uties"; civil conspiracy; and intentional infliction of emotional distress. The Boltons claimed that Lee "framed [them] for his own criminal conduct and caused the Boltons to take the fall for him." The Boltons sought damages for their criminal convictions from Lee and John Lee P.A. Both Forrest County Circuit Court judges recused, and the Mississippi Supreme Court appointed Special

3

Judge Barry W. Ford. Lee and John Lee P.A. filed their answer and affirmative defenses to the Boltons' complaint, invoking their Fifth Amendment right against self-incrimination but otherwise denied all claims. The Boltons later served their first set of interrogatories and requests for production of documents. Lee responded to the written discovery by asserting the Fifth Amendment. Lee then moved for a protective order and stay.

¶5. In April 2018, the Boltons moved to amend their complaint to add BancorpSouth and BancorpSouth employee teller Stacey Hall as defendants. The motion was granted, and on June 15, 2018, the Boltons filed their amended complaint asserting claims against both BancorpSouth and Hall for gross negligence, negligence per se, intentional infliction of emotional distress, and civil conspiracy; and against BancorpSouth for negligence, vicarious liability, and negligent supervision and training. The amended complaint reasserted the claims against Lee and John Lee P.A.

¶6. The Boltons allege the following facts in their amended complaint as the basis for their claims.[3] The Boltons claim that after Charles came to Hattiesburg in 1980, he and Lee developed a friendship due to Lee's law practice and Charles' work in law enforcement. According to Charles, Lee led a "secret double life" and "did not like people to know his personal business." Charles claims in the amended complaint that starting in 2009, in order

---

[3] The circuit court dismissed the Boltons' complaint against BancorpSouth and Hall pursuant to Mississippi Rule of Civil Procedure 12(b)(6). Consistent with our standard of review for dismissals under Rule 12(b)(6), we accept the factual allegations of the complaint as true for purposes of our review of the claims against BancorpSouth and Hall. *City of Meridian v. $104,960.00 U.S. Currency*, 231 So. 3d 972, 974 (¶8) (Miss. 2017). Any additional facts pertinent to Lee and John Lee P.A.'s summary judgment motion will be discussed as relevant in Part II of this opinion.

to obtain "cash without having to face scrutiny for his personal life decisions from those who would be hurt by his secret double life," Lee asked Charles "for a favor as a friend to cash checks for Lee," and Charles agreed. The amended complaint alleged that Charles cashed checks for Lee at the BancorpSouth next to Lee's law office and would "immediately bring the cash back to Lee." "Upon information and belief," Charles claims that he later learned that Lee had bribed Hall "to cash the checks without reporting the activity" by paying for Hall's child's college tuition. During or prior to this time, the Boltons assert that Lee "was an Advisory Board Member and considerable shareholder of BancorpSouth."

¶7. The Boltons' amended complaint further states that upon Lee's recommendation, the Boltons used the accounting firm of Topp McWhorter Harvey PLLC (formerly Nicholson & Company PLLC) for twenty years, specifically accountant Carl Nicholson, for their business and personal accounting and taxes. Topp McWhorter also served as Lee's accountant. The amended complaint asserted that in performing accounting services for Lee, Topp McWhorter "recorded Lee's checks" cashed by Charles as payments "for sales of goods and/or services from the Boltons' businesses (such as alcohol from Hall Avenue Package Store, and supplies and catering services from Sports 22 Catering), and deducted the amounts of the checks as business expenses on behalf of Lee."

¶8. However, according to the Boltons, because "the checks were not, in fact, paid to the Boltons for sales of goods or services, and because the Boltons never kept any portion of the funds after cashing the checks," Topp McWhorter did not report the checks as income for the Boltons. The Boltons claim that Lee paid Topp McWhorter or one of its accountants "a

5

substantial sum of money to provide fraudulent accounting, and not to disclose material facts regarding the foregoing to the Boltons."

¶9. The Boltons state in their amended complaint that Charles' actions in cashing the checks for Lee were "the facts on which the Government based its prosecution of the Boltons" for evading and attempting to evade their tax obligations and for filing false tax returns from 2009 to 2013. The Boltons claim that upon Lee's advice, they hired attorney Joe Sam Owen to represent them in the federal criminal matter, and "Lee paid Owen $60,000.00 to represent" the Boltons.

¶10. The Boltons further asserted in their amended complaint that after their federal trial for tax evasion and filing false tax returns, Charles "became aware, for the first time, that Lee was in fact an adverse witness for the Government against the Boltons" and that "Owen had, from the beginning of his representation, a clear conflict of interest which had prevented him from adequately and effectively representing [Charles], depriving both the Boltons, inter alia, of their due process and other rights under the Fifth and Sixth Amendments to the U.S. Constitution."

¶11. The Boltons averred that they moved to vacate their sentences or for a new trial based in part on "glaring deficiencies in Owen's representation of the Boltons at trial." For example, the Boltons state that Owen called only one witness in the Boltons' defense and "did not call several critical witnesses whose testimony was likely to have exonerated the Boltons," including an expert witness who had been retained by the Boltons, Topp McWhorter accountants, and Lee himself. The Boltons further assert that Owen failed to

object to "clearly improper and inadmissible evidence" and "the Government's numerous violations of Rule 16 of the Federal Rules of Criminal Procedure in flagrant violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and their own rules and practices."[4]

¶12.    In August 2018, BancorpSouth and Hall moved to dismiss the amended complaint under Mississippi Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.  In November 2018, Lee and John Lee P.A. moved for summary judgment.  The parties noticed depositions of Charles, Linda, and Lee.  Lee's deposition was taken in March 2019, at which he mostly asserted the Fifth Amendment.

¶13.    In January 2020, the Boltons filed a motion under Mississippi Rule of Civil Procedure 56(f) to defer, deny, or continue as premature Lee and John Lee P.A.'s motion for summary judgment.  The Boltons also moved to compel Lee to answer deposition questions, arguing that Lee had waived his Fifth Amendment privilege on several questions after testifying at his own sentencing hearing.[5]

---

[4] The Boltons raised these same issues in numerous post-trial motions in their criminal cause.  Charles' claims regarding his counsel's representation were raised "in three separate post-trial motions, all three of which moved for a new trial."  *Bolton*, 908 F.3d at 98.  The district court found no merit to the arguments, and the Fifth Circuit Court of Appeals affirmed, finding counsel's decisions were within trial strategy and finding all other arguments without merit considering "the *mountain of evidence* presented at trial in support of the jury's verdict."  *Id.* at 87, 90, 93, 102 (emphasis added).

[5] While this matter was ongoing, Lee pled guilty to tax fraud in a separate criminal matter for filing false tax returns for the years 2012, 2013, and 2014.  *United States v. Lee*, No. 1:17-CR-00019-KS-MTP (S.D. Miss).  He testified at his sentencing hearing on July 17, 2018.  His plea did not involve any issues related to the Boltons or checks written to the Boltons or their businesses.  Carl Nicholson was indicted and found guilty by a jury of eleven tax-related charges, including aiding and assisting Lee in taking improper tax deductions. *United States v. Nicholson*, No. 2:18-CR-00023-KS-MTP (S.D. Miss). Again, Nicholson's conviction was unrelated to the Boltons.

¶14. On February 11, 2020, the Boltons moved for leave to file a second amended complaint to add claims for unjust enrichment and a claim for accounting against Lee. That motion was denied.

¶15. On February 20, 2020, the circuit court granted Lee and John Lee P.A.'s motion for summary judgment, finding that "there is no genuine issue of material fact with regard to Charles and Linda Boltons' criminal conviction, and therefore, collateral estoppel bars the claims made by the Boltons in their amended complaint against John Lee, P.A. and John Lee." The Boltons' Rule 56(f) motion and motion to compel were denied as moot.

¶16. On February 25, 2020, the circuit court granted BancorpSouth and Hall's Rule 12(b)(6) motion to dismiss the amended complaint against them and entered an order of dismissal and final judgment. The Boltons' motion to reconsider was denied.

¶17. The Boltons now appeal. After reviewing the issues, we affirm.

## DISCUSSION

¶18. Before discussing the issues raised by the Boltons on appeal, we must address a fundamental principle of law. That is "the general principle . . . that, when one is barred in any action, real or personal, by judgment or demurrer, confession or verdict, he is barred as to that or a similar action of the like nature for the same thing for ever." *Cromwell v. Sac County*, 94 U.S. 351, 365 (1876) (Clifford, J., dissenting) (citing *Ferrer's Case*, 6 Coke 7a, 77. Eng. Rep. 263 (1598)). The law does not afford a criminal conspirator the right to sue his coconspirator for civil damages arising out of a criminal conspiracy. *Green v. Brown*, 159 Miss. 893, 899, 133 So. 153, 155 (1931) (A movant is entitled to no relief "where the

8

injury is brought about by his own illegal act, or an illegal act in which he is a joint participant voluntarily.").

¶19.    It is undisputed that the Boltons have been criminally convicted in federal court of knowingly and willingly committing tax evasion and tax fraud based in part on cashing checks written by Lee and failing to report the amounts of the cashed checks on their tax returns as income.  Further, as admitted in the Boltons' amended complaint, "the facts on which the Government based its prosecution of the Boltons" are the same facts on which the Boltons base their damages claims in the civil matter.  In essence, the Boltons assert that had Lee not used Charles as his "pawn," and had BancorpSouth and Hall alerted Charles that he should not cash Lee's checks, then the Boltons would not have been criminally prosecuted.  The Boltons seek to recover compensatory, consequential, incidental, and punitive damages as a result of their criminal prosecution.

¶20.    The Boltons' criminal convictions have been affirmed on appeal.  *Bolton*, 908 F.3d at 102.  Their petition for writ of certiorari was denied by the United States Supreme Court.  *Bolton v. United States*, 140 S. Ct. 47 (2019) (mem.).  They have filed numerous motions for a new trial and a claim of newly discovered evidence, which have all been denied.  The United States District Court for the Southern District of Mississippi has determined that "this case is finally concluded."  *United States v. Bolton*, No. 2:16-CR-7-KS-MTP, 2021 WL 1842142, at *1 (S.D. Miss. May 7, 2021) (order), *aff'd*, No. 21-60425, 2022 WL 965089 (5th Cir. Mar. 30, 2022).

¶21.    Unless the Boltons can assert a valid exception to the well-established procedural bar

9

prohibiting recovery based on one's own criminal behavior, the Boltons' claims fail as a matter of law. Further, they cannot argue that they are not guilty of the crimes because once found guilty, a criminal defendant cannot relitigate the facts that formed the basis of the crime. *Jordan v. McKenna*, 573 So. 2d 1371, 1374 (Miss. 1990).

¶22. With this understanding in mind, we will address the Boltons' issues raised on appeal.

### I. The claims against BancorpSouth and Hall were properly dismissed under Rule 12(b)(6).

¶23. The circuit court granted BancorpSouth and Hall's motion to dismiss the claims against them under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *City of Vicksburg v. Williams*, 191 So. 3d 1242, 1244 (¶7) (Miss. 2016). When reviewing a ruling on a motion to dismiss under Rule 12(b)(6), "the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt on the face of the complaint that the plaintiff will be unable to prove any set of facts in support of his claim." *Schaffner Mfg. Co. v. Powell*, 331 So. 3d 11, 13 (¶6) (Miss. 2022). "Orders on Rule 12(b)(6) motions are reviewed de novo." *Id.*

¶24. The Boltons' amended complaint makes the following allegations regarding the actions or inactions of BancorpSouth and Hall, which we accept as true for purposes of reviewing this issue. According to the amended complaint, Charles cashed checks written by Lee at the BancorpSouth next door to Lee's law office so that Lee would have cash to support his "secret double life," and once the checks were cashed, Charles would "immediately bring the cash back to Lee." The Boltons allege that "[u]nbeknownst to

Charles, Lee had bribed Defendant Stacey Hall, a teller at BancorpSouth, to cash the checks without reporting the activity" by paying for Hall's child's college tuition. The Boltons assert that if BancorpSouth and/or Hall had reported the suspicious activity, it would have "alerted the Boltons that they were being used as pawns for Lee's fraudulent and criminal activity," and the Boltons could have avoided criminal prosecution.

¶25. On appeal, the Boltons argue that dismissal was improperly granted because (1) the amended complaint demonstrated a cause of action for negligence; (2) the circuit court overlooked their claim that BancorpSouth and Hall owed them a duty to exercise reasonable care; and (3) they should have been allowed to conduct discovery on whether there was a breach of fiduciary duty.[6]

### A. Negligence

¶26. "[T]o prevail on a claim of negligence, the plaintiff must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation and injury." *Sanderson Farms Inc. v. McCullough*, 212 So. 3d 69, 76 (¶17) (Miss. 2017) (internal quotation marks omitted). "Duty and breach of duty . . . are essential to finding negligence and therefore, must be demonstrated first." *Id.*

#### 1. Duty

---

[6] The Boltons raise no argument in their brief regarding the claims in the amended complaint for intentional infliction of emotional distress, vicarious liability, negligent supervision and training, and civil conspiracy. When the appellant's brief fails to raise an issue and cite appropriate authority as required by Mississippi Rule of Appellate Procedure 28(a)(7), this Court is under no obligation to review the issue. *Taylor v. Kennedy*, 914 So. 2d 1260, 1262 (¶4) (Miss. Ct. App. 2005). Thus, we will not review any issues not specifically raised on appeal.

¶27.   The Boltons claim that BancorpSouth and Hall owed a duty to report Charles' cashing of Lee's checks as suspicious activity under 31 C.F.R. § 1020.320.  Section 1020.320 requires "that financial institutions file a suspicious activity report (SAR) with the Financial Crimes Enforcement Network (FinCEN) of the United States Treasury Department within thirty (30) calendar days of detecting the facts warranting such a report."  "[T]he facts warranting such a report" are described as follows:

> (1) Every bank shall file with the Treasury Department, to the extent and in the manner required by this section, a report of any suspicious transaction relevant to a possible violation of law or regulation.  A bank may also file with the Treasury Department by using the Suspicious Activity Report specified in paragraph (b)(1) of this section or otherwise, a report of any suspicious transaction that it believes is relevant to the possible violation of any law or regulation but whose reporting is not required by this section.

> (2) A transaction requires reporting under the terms of this section if it is conducted or attempted by, at, or through the bank, it involves or aggregates at least $5,000 in funds or other assets, and the bank knows, suspects, or has reason to suspect that:

>> (i) The transaction involves funds derived from illegal activities or is intended or conducted in order to hide or disguise funds or assets derived from illegal activities (including, without limitation, the ownership, nature, source, location, or control of such funds or assets) as part of a plan to violate or evade any Federal law or regulation or to avoid any transaction reporting requirement under Federal law or regulation;

>> (ii) The transaction is designed to evade any requirements of this chapter or of any other regulations promulgated under the Bank Secrecy Act; or

>> (iii) The transaction has no business or apparent lawful purpose or is not the sort in which the particular customer would normally be expected to engage, and the bank knows of no reasonable explanation for the transaction after examining the available facts, including the background and possible purpose

12

> of the transaction.

> A suspicious transaction shall be reported by completing a Suspicious Activity Report ("SAR"), and collecting and maintaining supporting documentation as required by paragraph (d) of this section.

31 C.F.R. § 1020.320.

¶28. Even accepting as true the Boltons' assertion that BancorpSouth and Hall had a duty to file a SAR under 31 C.F.R. § 1020.320 based on Charles' cashing of the checks written by Lee, this created no duty between BancorpSouth or Hall and the Boltons. As set forth in section 1020.320, a SAR is filed with the Financial Crimes Enforcement Network of the United States Treasury Department. The regulation creates no duty to notify anyone else of the report. In fact, the regulation specifically prohibits disclosure of the report: "No bank, and no director, officer, employee, or agent of any bank, shall disclose a SAR or any information that would reveal the existence of a SAR." 31 C.F.R. § 1020.320(e)(1)(i).

¶29. Consistent with this plain language, "[c]ourts have repeatedly rejected negligence claims based on a bank's duty [to file a SAR] . . . , concluding [the] bank's duty . . . is owed only to the government and not to private parties." *Douglas v. Trustmark Nat'l Bank*, 201 F. Supp. 3d 800, 807 (S.D. Miss. 2016) (quoting *Pub. Serv. Co. of Okla. v. A Plus Inc.*, No. CIV-10-651-D, 2011 WL 3329181, at *8 (W.D. Okla. Aug. 2, 2011)). "Courts addressing the issue have consistently held that the Bank Secrecy Act requiring such reports does not create a private right of action or establish a duty of care to private parties." *Id.* at 807-08 (citing *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 874 (N.D. Iowa 2009) ("[C]ourts have uniformly rejected" the argument that the Bank Secrecy Act creates duty

13

owed to private parties.); *Marlin v. Moody Nat'l Bank N.A.*, No. H-04-4443, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006) (The Bank Secrecy Act "does not create a private right of action and, therefore, does not establish a standard of care.")).

¶30.   The Boltons argue that the circuit court improperly relied on *Douglas*, 201 F. Supp. 3d at 800, in finding that a negligence claim may not be based on a bank's failure to file a SAR.  The Boltons assert that *Douglas*'s "conclu[sion] that a claim for negligence may not be based upon a bank's failure to file a SARS report" is not binding on a state court "because *Douglas* was a district court federal—not state—action," and "there is no on-point Mississippi law regarding whether a violation of SARS could lead to a finding of negligence."  Rather, the Boltons argue that "*Douglas* only illustrated that a bank does not owe a duty to a 'non-customer'" and "[t]he implication, then, is that a bank does—or could—owe a duty to an actual customer."

¶31.   In *Douglas*, the plaintiff was injured in an automobile accident and hired the law firm Schwartz & Associates P.A., which negotiated a settlement of $500,000. *Id.* at 802.  Because Douglas had filed for bankruptcy, Schwartz retained attorney Vann Leonard to obtain the bankruptcy court's approval of the settlement and payment of attorney's fees and expenses of $172,414.68 to Schwartz. *Id.*  Leonard deposited the settlement proceeds into a non-IOLTA account at Trustmark National Bank, and upon the bankruptcy court's approval, paid Schwartz's attorney's fees. *Id.*  Leonard then embezzled the rest of the money. *Id.*  Douglas, as a successor-in-interest of Schwartz & Associates, sued Trustmark and Regions Bank, where Leonard held trust accounts, for negligence and other causes of action based on the

14

allegation that in the months prior to the embezzlement, "these accounts ran negative balances and were overdrawn." *Id.* at 802-03. Trustmark and Regions countered that Douglas' negligence claim failed as a matter of law because they owed no duty to Douglas since she was not a customer of either bank. *Id.* at 803.

¶32. The *Douglas* court recognized that the Mississippi Supreme Court had not addressed whether a bank may be held liable to a noncustomer whose funds are misappropriated. *Id.* at 806. However, the court found it unnecessary to address this issue because none of the settlement funds at issue "were misappropriated by Leonard from his account at Trustmark or Regions. Rather, all of the funds embezzled by Leonard belonged to Douglas and/or her bankruptcy estate." *Id.*

¶33. The *Douglas* court did address Douglas' claim that the banks were negligent for failure to file a SAR. *Id.* Douglas claimed that had the banks timely filed a SAR, "they could have 'prevented the embezzlement' of Douglas's funds." *Id.* at 807. The court rejected this claim, pointing out the "uniformly" accepted principle that because a bank's duty to file a SAR "is owed only to the government and not to private parties," it "does not create a private right of action or establish a duty of care to private parties." *Id.* (citing *Pub. Serv. Co. of Okla.*, 2011 WL 3329181, at *8; *Armstrong*, 678 F. Supp. 2d at 874; *Marlin*, 2006 WL 2382325, at *7).

¶34. Accordingly, because a bank's failure to file a SAR under 31 C.F.R. § 1020.320 creates no duty of care to private parties, the Boltons have failed to establish a duty owed to them by BancorpSouth or Hall to file a SAR, rendering the question of a breach of this

purported duty moot.

## 2. Proximate Cause

¶35. The amended complaint also presents no legal basis for the Boltons' claim that BancorpSouth or Hall proximately caused the Boltons' injuries. The Boltons assert that they are entitled to recover compensatory, consequential, and incidental damages for their criminal prosecution, as well as punitive damages. The Boltons argue that BancorpSouth and Hall's failure to file a SAR proximately cause their injuries because if BancorpSouth or Hall had reported Charles' cashing of Lee's checks as suspicious activity, they would not have been criminally convicted.

¶36. As BancorpSouth and Hall point out, there is no allegation in the amended complaint that BancorpSouth and Hall were directly involved in the actions that led to the Boltons' convictions. BancorpSouth and Hall correctly assert that the Boltons make no argument that BancorpSouth or Hall told the Boltons what to do with the cash after they had it, gave the Boltons tax advice, prepared the Boltons' tax returns, or signed or filed the Boltons' tax returns. Rather, the amended complaint states that Topp McWhorter, acting under Lee's influence, was responsible for inaccuracies in the tax returns. "[I]n order to incur liability when a party is negligent, that negligence also must be the proximate cause of the injury." *Utz v. Running & Rolling Trucking Inc.*, 32 So. 3d 450, 466 (¶41) (Miss. 2010). "Proximate cause requires the fact finder to find that the negligence was both the cause in fact and the legal cause of the damage." *City of Jackson v. Spann*, 4 So. 3d 1029, 1033 (¶11) (Miss. 2009).

16

¶37. Therefore, even if the Boltons could prove the existence of a duty, they have not shown how the alleged breach of that duty directly caused their injury. Further, according to the amended complaint, the Boltons knew of or participated in the very misdeed they claim Lee orchestrated and BancorpSouth failed to report. Without a showing of duty or proximate causation, the Boltons' negligence claim fails.

**B.    Duty to Exercise Reasonable Care**

¶38. The Boltons argue that the circuit court only focused on their claim that BancorpSouth failed to file a SAR and "overlooked" paragraph 54 of the complaint, which states: "Defendant BancorpSouth owed a duty to the Boltons to *exercise reasonable care* in performing their banking services for which the Boltons have been loyal customers for a number of years." (Emphasis added). Taking this claim in context, the "reasonable care" referred to in paragraph 54 was the duty to file a SAR. The next paragraph, paragraph 55, states: "Defendant BancorpSouth breached its duty of reasonable care to the Boltons *by failing to report the suspicious activity* of allowing large sums of business checks to be cashed which should not have otherwise been allowed and where reporting such activity would have alerted the Boltons that they were being used as pawns for Lee's fraudulent and criminal activity." (Emphasis added).

¶39. As stated, the Boltons have failed to cite any authority that supports their claim that BancorpSouth or Hall owed them a duty to report any suspicious activity or that BancorpSouth proximately cause their injuries. This issue is without merit.

**C.    Breach of Fiduciary Duty**

¶40. The Boltons argue that "[i]t was error for the trial court to decide that, simply because The Bank Defendants may not have had a duty to file a SARS report, that The Bank Defendants had no duty at all to Plaintiffs." They argue that they should have been allowed to conduct discovery on whether BancorpSouth or Hall owed a fiduciary duty to the Boltons based on the fact that the Boltons had been customers of BancorpSouth for a "number of years."

¶41. The amended complaint, however, does not raise a claim for breach of fiduciary duty. The enumerated counts in the amended complaint are negligence, intentional infliction of emotional distress, vicarious liability, negligent supervision and training, and civil conspiracy. Thus, we need not address the argument that discovery should have been allowed on breach of fiduciary duty.

¶42. Taking the allegations in the amended complaint as true, it appears beyond doubt from the face of the complaint that the Boltons cannot prove any set of facts to support their claims against BancorpSouth or Hall. If there is no legal claim asserted in the complaint, there is no legal right to conduct discovery. That is one of the very purposes of Rule 12(b)(6)—to test the legal sufficiency of a legal claim before discovery. The circuit court did not err in dismissing the claims pursuant to Rule 12(b)(6).

## II. Summary judgment was properly granted in favor of John Lee and John Lee P.A.

¶43. "The grant or denial of a summary judgment motion is reviewed de novo."' *Byram Cafe Grp. LLC v. Tucker*, 344 So. 3d 844, 846 (¶10) (Miss. 2022). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file,

18

together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" M.R.C.P. 56(c). "While the evidence is viewed in the light most favorable to the nonmoving party," the nonmoving party must show evidence sufficient to establish a genuine issue of material fact issue to preclude summary judgment. *Byram Cafe Grp.*, 344 So. 3d at 846 (¶10) (quoting *Peak v. Cohee*, 294 So. 3d 604, 607 (¶10) (Miss. 2020)).

¶44. In defending against a summary judgment motion, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." M.R.C.P. 56(e). "Summary judgment is mandated where the nonmoving party fails to show evidence sufficient to establish the existence of an essential element to his case." *Byram Cafe Grp.*, 344 So. 3d at 846 (¶10) (quoting *Ala. Great S. R.R. Co. v. Jobes*, 156 So. 3d 871, 879 (¶21) (Miss. 2015)).

¶45. The circuit court found that the Boltons' claims against Lee and John Lee P.A. were barred by collateral estoppel due to the criminal convictions. The Boltons argue on appeal that (1) collateral estoppel does not apply because the parties and causes of action in the civil suit are not identical to those in the criminal suit; (2) there is room for suspicion regarding the reliability of the jury's verdict because newly discovered evidence exists; and (3) a case relied on by Lee and John Lee P.A. in their motion for summary judgment, *Trigg v. Farese*, 266 So 3d 611 (Miss. 2018), is distinguishable.

### A. Collateral Estoppel

¶46. Collateral estoppel precludes relitigating a specific issue that was "(1) actually litigated in the former action; (2) determined by the former action; and (3) essential to the judgment in the former action." *Gibson v. Williams, Williams & Montgomery P.A.*, 186 So. 3d 836, 845 (¶21) (Miss. 2016). "The doctrine of collateral estoppel . . . serves a dual purpose and protects litigants from the burden of re-litigating an identical issue with the same party or his privy and promotes judicial economy by preventing needless litigation." *Id.* (internal quotation marks omitted). While similar to the doctrine of res judicata, collateral estoppel differs in that it "applies only to those issues actually litigated and not to those issues which merely could have been litigated in the prior suit." *Id.* at (¶22).

¶47. The Boltons argue that "[w]hile tax evasion was an issue in the [criminal] matter, John Lee was not a party" to the criminal matter, and in order for collateral estoppel to apply, the same parties must be present. In support of their argument, the Boltons cite the "four identities" of res judicata, one of which is the "identity of the parties to the cause of action." *See Dunaway v. W.H. Hopper & Assocs. Inc.*, 422 So. 2d 749, 751 (Miss. 1982). This assertion, however, is contrary to established law regarding the use of a criminal conviction in the context of collateral estoppel.

¶48. Our Supreme Court has held that "a conviction in a prior criminal case is conclusive, in a subsequent civil action, of the facts upon which the conviction was based." *J.R. ex rel. R.R. v. Malley*, 62 So. 3d 902, 905 (¶11) (Miss. 2011) (quoting *Jordan*, 573 So. 2d at 1376). Logically, the identity of the parties in a subsequent civil action is not required to be identical

because a third person is never a party in a criminal action between the criminal defendant and the prosecuting governmental entity.

¶49.    In *Jordan*, 573 So. 2d at 1371, a rape victim, Marie, was awarded actual and punitive damages by a jury against her aggressor, Jordan, for civil assault and battery after Jordan was criminally convicted of rape. Jordan appealed, raising various issues related to fault. *Id.* The Mississippi Supreme Court found Jordan's defenses barred by collateral estoppel because the issue of fault was determined in the criminal matter and could not be relitigated in the civil matter. *Id.* The Supreme Court cited the long-standing principle that "[w]here a question of fact essential to a judgment is actually litigated and determined by a valid and final judgment, that determination is conclusive . . . against the party against whom it was made in a subsequent suit on a different cause of action." *Id.* (citing *Garraway v. Retail Credit Co.*, 244 Miss. 376, 385, 141 So. 2d 727, 730 (1962); *Dunaway*, 422 So. 2d at 751; *Magee v. Griffin*, 345 So. 2d 1027, 1032 (Miss. 1977)).

¶50.    Applying this general principle to the civil matter, the Supreme Court found as a matter of "common sense" that "[i]f Jordan has been found beyond a reasonable doubt to have assaulted and raped Marie . . . , it stands to reason that, in a civil action where Marie's burden is but by a preponderance of the evidence, substantial credibility should be given the criminal finding." *Id.* at 1376. And because Marie was the victim in the criminal trial, she "occupied a like status" to a party, and accordingly, in such a case, "[c]ommon sense suggests that there is enough of an identity of the parties in the two cases so that there is no rational reason for refusing to apply collateral estoppel here on grounds of lack of mutuality."

21

*Id.* at 1377; *see also J.R.*, 62 So. 3d at 907 (¶16) (finding that the parents of a minor who had been fondled could maintain a civil action against the criminal defendant for the intentional tort of battery and intentional infliction of emotional distress and that the defendant's fault with regard to the elements of the civil claims had been established either entirely or partially by the defendant's guilty plea in the criminal matter).

¶51. As stated, Charles was convicted of tax evasion, and Charles and Linda were convicted of filing false tax returns for the years 2009–2013 based on part on their failure to report Lee's checks as income. "The elements of [a] § 7201 tax evasion are: (1) willfulness, (2) existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax." *Bolton*, 908 F.3d at 88 (quoting *United States v. Nolen*, 472 F.3d 362, 377 (5th Cir. 2006)). "A person commits the felony of filing a false tax return in violation of 26 U.S.C. § 7206(1) when he 'willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter.'" *Bolton*, 908 F.3d at 88 (quoting *United States v. Bishop*, 264 F.3d 535, 546 (5th Cir. 2001)).

¶52. A three-day criminal trial was held where "the government presented evidence that the Boltons treated money received by their two businesses as 'loans' rather than 'income' when reporting their business income on their personal income tax returns, . . . thus falsely reducing their tax liability. The deposits in question included checks from various entities and individuals, including Lee and Manheim Mississippi Auto Auction." *Id.* at 87.

"Testimony was presented at trial that the Boltons received approximately $273,000 worth of checks from Lee as income." *Id.* at 95. Although the Boltons chose not to testify at trial, the record shows that the jury was instructed on the good-faith defense that if the Boltons "believed in good faith that they were acting properly or believed in good faith that the statements and representations were correct, even if they were mistaken in that belief, there would be no crime and you cannot return a verdict of guilty."[7]

¶53. The jury found Charles guilty beyond a reasonable doubt of five counts of filing false tax returns and four counts of tax evasion, and the jury found Linda guilty beyond a reasonable doubt of five counts of filing false tax returns. The Boltons filed multiple motions for a new trial based in part on issues related to the checks written by Lee. In ruling on their third motion for a new trial, the district court stated with regard to the Lee checks: "The Court has three times rejected this argument [that the checks were not proven as income], finding that the Government had presented sufficient evidence that these checks were income to Defendants, and has twice ruled that even if Defendants had completely succeeded in showing that the John Lee checks were not income, there was still sufficient evidence of unreported income to support their convictions." *Id.*[8]

---

[7] As the Fifth Circuit noted, although a good-faith defense jury instruction was given, insofar as the Boltons suggest that "the convictions of Lee and Nicholson support a defense of good-faith reliance on their tax accountant," "the Boltons both chose not to pursue a good faith defense at trial." *Bolton*, 2022 WL 965089, at *2 n.1.

[8] In seeking a new trial, the Boltons also argued that their trial attorney, Owen, had a conflict of interest and provided ineffective assistance. Owen and Owen, Galloway & Myers PLLC were permitted to respond to the allegations, all of which they denied as untrue and frivolous. As to Charles' explanation of the checks he received from Lee, Owen stated he and his firm "were facing a moving target with Charles Bolton." According to Owen, at

23

¶54.   The Boltons appealed to the United States Court of Appeals for the Fifth Circuit, which affirmed their convictions. *Id.* The Fifth Circuit found that "[a]t the Boltons' trial, the government presented sufficient evidence that Charles evaded taxes for the years 2010 through 2013 and that the Boltons filed false tax returns in which they consistently underreported their income from 2009 through 2013." *Id.* In finding that the evidence was sufficient to support the verdict, the Fifth Circuit noted its "high level of deference to the jury's verdict and *the mountain of evidence* presented at trial in support of the jury's verdict . . . ." *Id.* (emphasis added). The Boltons' petition for writ of certiorari to the United States Supreme Court was denied. *Bolton v. United States*, 140 S. Ct. 47 (2019).

¶55.   The Boltons argue that "due process shapes collateral estoppel and therefore the Boltons are entitled to their day in [c]ourt." The Boltons clearly have had their "day in court." A federal criminal trial occurred on the issues, in part, alleged in the complaint. The jury returned a verdict of guilty on several criminal charges. The Boltons themselves admit that the facts that form the basis of the amended complaint in this civil matter were the same facts that formed the "primary factual basis[] for the Government's case against the Boltons," and the Lee checks "ended up being the facts on which the Government based its prosecution of the Boltons." The Boltons cannot recover civilly on the same set of facts that form the basis of their knowingly and willfully violating federal law.

different times, Charles claimed that (1) he cashed Lee's checks and returned the cash to him so Lee could provide a confidential source of cash to subsidize an unknown female friend whom Charles could not identify; (2) he and Lee used part of the cash to gamble, and if Charles lost, he was not obligated to pay Lee back, and if Charles won, Charles retained the winnings; (3) some of the money was "given to him"; (4) and all of the money from the cashed checks was retained by Charles (Charles later retracted this statement).

¶56. When one commits an illegal act, "the courts will not give him relief for injuries he suffered in so doing, where the injury is brought about by his own illegal act, or an illegal act in which he is a joint participant voluntarily." *Green*, 159 Miss. at 899, 133 So. at 155 (quoting *Grapico Bottling Co. v. Ennis*, 140 Miss. 502, 510, 106 So. 97, 99 (1925)). In 1931 in *Green*, the Supreme Court used the following example to demonstrate this principle:

> Two men enter into a conspiracy to rob on the highway, and they do rob, and while one is holding the traveler the other rifles his pockets of $1,000, and then refuses to divide, and the conspiring party files a bill to settle up the partnership, when they go into all the details of the conspiracy and the rencounter and treachery. Will a court of justice hear them? No case can be found where a court has allowed itself to be so abused.

*Id.* at 899, 133 So. at 155.

¶57. The Boltons were found guilty by a jury and are therefore collaterally estopped from relitigating their guilt or involvement in failing to report the checks as income. The Boltons cannot attempt to shift blame to a co-conspirator after their fault has been established by jury. The Boltons cannot blame Lee for their improper reporting of income because even if the Boltons could prove that they agreed with Lee that the checks would not be reported as income, that would amount to a criminal conspiracy. The law does not allow the recovery of compensatory damages against co-conspirators for civil legal claims that arise out of a criminal conspiracy. Again, this principle was clearly set forth by the Mississippi Supreme Court in *Green* where it stated that a plaintiff cannot recover "where [an] injury is brought about by [the plaintiff's] own illegal act, or an illegal act in which he is a joint participant voluntarily." *Id.* The same is true for defendants BancorpSouth and Hall. Even if the Boltons could prove BancorpSouth and Hall somehow violated the law, this only shows joint

25

participation in an illegal act, for which no recovery can be had under the law. This issue is without merit.

### B. Suspicion Regarding the Reliability of the Boltons' Convictions

¶58. In *Jordan*, the Supreme Court set out certain "escape hatches" that preclude the application of collateral estoppel, such as "[w]here there is room for suspicion regarding the reliability of [the] first fact findings . . . ." *Jordan*, 573 So. 2d at 1375. The Boltons argue that this escape hatch applies because there is "new evidence" that raises due-process concerns about their criminal convictions. Specifically, the Boltons claim that since their criminal trial, (1) a principal agent of Topp McWhorter, Nicholson, has been convicted of aiding and assisting the preparation of Lee's fraudulent tax returns; (2) Lee pled guilty to taking wrongful tax deductions; and (3) Lee has testified that the checks written to the Boltons were loans or gifts and, thus, not taxable. The Boltons contend that this "new evidence" demonstrates a genuine dispute of material fact precluding summary judgment.

¶59. These claims of new evidence, however, have been rejected by the district court and Fifth Circuit. After the Boltons' federal criminal convictions were affirmed by the Fifth Circuit and their petition for writ of certiorari was denied by the United States Supreme Court, the Boltons filed a motion for a new trial based on newly discovered evidence. *United States v. Bolton*, No. 2:16-CR-7-KS-MTP, 2020 WL 7364983, at *1 (S.D. Miss. Dec. 15, 2020) (order), *set aside in part on other grounds*, No. 2:16-CR-7-KS-MTP, 2021 WL 1842142 (S.D. Miss. May 7, 2021) (order), and *aff'd*, No. 21-60425, 2022 WL 965089 (5th Cir. Mar. 30, 2022). The district court stated that the Boltons' claims in their motion "were

26

less than succinctly pled and . . . imprecise and confusing." *Id.* The district court allowed the Boltons to provide clarification, but their additional briefing "was basically useless for developing an understanding of what the Boltons were claiming." *Id.* The court stated that the responses were "garbled, irrelevant and indeed some were misstated." *Id.*

¶60. After extensive review, the district court determined that the Boltons' claim essentially was that "the Boltons committed tax fraud, and John Lee committed tax fraud with the same accountant who was also convicted of tax fraud (*U.S. vs. Carl Nicholson* No. 19-60365, 5th Cir. 2020, District Court Docket No. 2:18cr23-1), and the fact that Lee's testimony is now available . . . should conclusively prove that the Boltons are entitled to a new trial." *Bolton*, 2020 WL 7364983, at *2. In support of their claim, the Boltons "cite[d] extensive deposition and trial testimony from separate and unrelated proceedings. (*U.S. vs. Carl Nicholson*, MSSD 2:18cr23, *Charles Bolton, et al. vs. John Lee, et al.*, Circuit Court of Forrest County, MS, Civil Action 2017-72)." *Bolton*, 2020 WL 7364983, at *1. The district court "spent considerable time and effort going through the pleadings and cited documents, including the transcripts and deposition testimony from unrelated cases." *Id.*

¶61. The district court found that the evidence presented by the Boltons was neither relevant nor newly discovered. First, it found that Lee's testimony at Nicholson's trial and the factual basis for Lee's plea, which the Boltons claimed "conclusively prove[d]" that they were entitled to a new trial, were "irrelevant to the Boltons' Motion" because nothing in the testimony or plea related to the Boltons' case. *Id.* The factual basis for Lee's guilty plea to tax fraud was that from 2012 to 2014, Lee claimed payments from his law office as

27

deductible expenses that were actually funds paid to and on behalf of family members unrelated to his law practice. Lee additionally admitted that payments for life insurance premiums to Lee's personal trust were falsely claimed to be referral legal fees to the trust's administrator.

¶62. The district court further found that Lee's deposition testimony that he wrote the Boltons checks for loans, while newly available, was not newly discovered because "the Boltons had personal knowledge of their own tax returns and could have presented any evidence that Lee could have [testified to] about payments to them," and they "also could have called their accountant, Carl Nicholson or members of his staff as witnesses." *Id.* Lee's deposition was taken on May 31, 2019. His attorney asserted the Fifth Amendment throughout most of the deposition. However, Lee did state in the deposition that he wrote checks to the Boltons' businesses upon Charles' request "for food and liquor for his two businesses to keep them afloat and that they were on a shoestring operating day-to-day and were only kept open by—." His attorney then cut him off and asserted the Fifth. Lee also testified in the deposition that he purchased liquor from the Boltons' businesses. Finally, Lee stated that he never asked Charles to cash checks for him, and when asked if he ever wrote a check to one of the Boltons' businesses and asked to receive cash in return, he said, "Never. Not one time. Positively, unequivocally, no." It is hard to imagine how this would constitute new evidence exonerating the Boltons for criminal liability. After review, the district court concluded that "[t]he evidence *is overwhelming* that the Boltons' claim of newly discovered evidence . . . is not well taken." *Id.* (emphasis added).

¶63. In affirming the district court's order, the Fifth Circuit noted that the Boltons additionally failed to explain "how Lee's deposition testimony and his invocation of his Fifth Amendment privilege serve any other purpose than impeachment," and "'[m]ere impeachment evidence' that 'only casts doubt on the veracity of a witness's testimony,' is insufficient to warrant a new trial." *United States v. Bolton*, No. 21-60425, 2022 WL 965089, at *2 (5th Cir. Mar. 30, 2022) (quoting *United States v. Eghobor*, 812 F.3d 352, 363-64 (5th Cir. 2015)); *see also United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004) (setting out the "five prerequisites (typically referred to as the *Berry* rule) that must be met to justify a new trial on the ground of newly discovered evidence"). The Fifth Circuit further found that Nicholson's conviction for tax fraud—which, the Boltons argue, if introduced at a new trial, probably would result in acquittal because a "reasonable jury" would understand that a lay person "relies entirely" on their accountant's expertise—was not newly discovered evidence because "whether and how much the Boltons relied on their accountant is something uniquely within the Boltons' personal knowledge. In other words, it is not new evidence." *Id.*

¶64. The Boltons' argument regarding newly discovered evidence has been rejected by the district court and Fifth Circuit, and we find the alleged newly discovered evidence forms no "suspicion regarding the reliability of" the Boltons' criminal convictions. *Jordan*, 573 So. 2d at 1375. This issue is without merit.

### C. *Trigg v. Farese*

¶65. Lee and John Lee P.A. cited *Trigg v. Farese*, 266 So. 3d 611, 616 (¶21) (Miss. 2018),

in their summary judgment motion for the assertion that the Boltons' civil claims were barred because they had not been exonerated of the criminal charges. The Boltons argue this case is distinguishable.

¶66. In *Trigg*, Trigg and his father filed a legal malpractice action against Trigg's trial attorney after Trigg pled guilty to felony DUI upon his attorney's alleged advice that he would receive no jail time if he pled guilty, which turned out to be incorrect. *Id.* at 616-17 (¶¶4-5). The Mississippi Supreme Court found that the trial court properly dismissed Trigg's claims because a criminal defendant "must 'exonerate' himself by obtaining relief from his conviction or sentence before he may pursue a claim against his defense attorney for causing him to be convicted or sentenced more harshly than he should have been." *Id.* at 616 (¶2).

¶67. In applying the law of this State, our Supreme Court held in *Trigg* that "our Legislature has created a comprehensive scheme for a convicted criminal defendant to challenge that conviction on appeal or through postconviction relief." *Id.* Trigg's conviction stemmed from a guilty plea, and "[a]s the Legislature itself put it, the Mississippi Uniform Post-Conviction Collateral Relief Act is intended 'to provide the courts of this state with an exclusive and uniform procedure for the collateral review of convictions and sentences.'" *Id.* at 622-23 (¶31) (quoting Miss. Code Ann. § 99-39-3(1) (Rev. 2015)). And "[p]ermitting collateral relitigation of the validity of criminal convictions outside that framework would undermine the effective administration of the judicial system." *Id.* at 623 (¶31) (internal quotation marks omitted).

¶68. While the Supreme Court's holding in *Trigg* "extends only to claims that stem from

allegations of professional malpractice," *id.* at 616 (¶3), the same principles apply here. That is, a criminal defendant must follow the statutory scheme to challenge his convictions. It would defy logic to allow the Boltons to challenge the reliability of their criminal convictions within the context of a civil suit based on alleged new evidence that the district court and Fifth Circuit have found is neither newly discovered nor relevant. The Boltons were criminally convicted after a three-day trial, and their multiple motions for a new trial have been denied. Their convictions have been unanimously affirmed by the Fifth Circuit, and the United States Supreme Court has denied their petition for writ of certiorari. *Bolton*, 908 F.3d at 75; *Bolton v. United States*, 140 S. Ct. 47 (2019).

¶69. As the district court described, this "straightforward tax evasion case . . . morphed into extended and contentious litigation" with Charles "at one time or another, being represented by ten different attorneys and Movant Linda Bolton being represented by nine different attorneys." *Bolton*, 2020 WL 7364983, at *1. The Boltons clearly have made extensive efforts to challenge their criminal convictions, all of which have failed. They cannot make these same challenges in the context of a civil action now on appeal before this Court.

¶70. Viewing the evidence in the light most favorable to the Boltons, we find no genuine issues of material fact precluding summary judgment. The circuit court appropriately found the Boltons' claims against Lee and John Lee P.A. were barred by collateral estoppel and correctly granted summary judgment in favor of Lee and John Lee P.A.

## CONCLUSION

¶71. The Boltons were convicted by jury in a federal criminal trial of knowingly and

31

willfully committing tax evasion and filing false tax returns based in part on failing to report checks written by Lee as income. The Boltons have presented no genuine issue of material fact regarding the reliability of those convictions, and the Boltons are thus collaterally estopped from recovering in a civil action on the same facts that formed the basis of their criminal convictions of tax evasion and filing false tax returns. The circuit court's dismissal of the amended complaint against BancorpSouth and Hall and the grant of summary judgment in favor of Lee and John Lee P.A. are affirmed.

¶72. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., AND WESTBROOKS, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**